Herbert A. NOBLES,
Plaintiff-Appellant,

v.

FIRST CAROLINA COMMUNICATIONS, INCORPORATED; E.B. Chester, Jr.; Aiken Cablevision, Incorporated, formerly known as F.C. Barnwell, Incorporated; F.C. Aiken, Incorporated; Gary Phillips; C. David Smith; A.P. Thorpe, III; G.W. Thorpe; Thomas D. Livingston; Frank B. Cannon; Lon Carruth; Roy F. Coppedge, III; Anthony J. Bolland; Walter F. Payne, Jr.; 1st Cablevision, Incorporated, a Nevada Corporation; Kilpatrick & Cody, a Partnership; Aiken Cablevision, Limited, a Limited Partnership, Defendants–Appellees.

No. 90–2363.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 7, 1991.

Decided April 3, 1991.

As Amended May 6, 1991.

David McKenzie Clark, Clark & Wharton, Greensboro, N.C., for plaintiff-appellant; B. Douglas Martin, Greensboro, N.C., on brief.

Catherine E. Thompson, Smith Helms, Mulliss & Moore, Charlotte, N.C., for defendants-appellees; E. Osborne Ayscue, Jr., Bradley R. Kutrow, Smith, Helms, Mulliss & Moore, Charlotte, N.C., James D. Blount, Sharron R. Edwards, Michael E. Weddington, Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, Raleigh, N.C., on brief.

Before ERVIN, Chief Judge, CHAPMAN, Circuit Judge, and SPENCER, District Judge for the Eastern District of Virginia, sitting by designation.

CHAPMAN, Circuit Judge:

Plaintiff-appellant Herbert A. Nobles ("Nobles") instituted this action against defendant-appellees [1] on June 20, 1989 in the United States District Court for the Eastern District of North Carolina. The complaint alleged violations of sections 10, 13, and 14 of the Securities Exchange Act of 1934 and the rules and regulations promulgated thereunder.[2] The district court granted defendants' motion to dismiss for failure to state a claim upon which relief could be granted,[3] and Nobles appeals. We affirm.

1. Nobles' complaint named the following as defendants: First Carolina Communications, Inc.; E.B. Chester, Jr.; Aiken Cablevision, Inc. (formerly known as F.C. Barnwell, Inc.); F.C. Aiken, Inc.; Gary Phillips; C. David Smith; A.P. Thorpe, III; G.W. Thorpe; Thomas Livingston; Frank B. Cannon; Lon Carruth; Roy F. Coppedge, III; Anthony J. Bolland; Walter F. Payne, Jr.; 1st Cablevision, Inc. (a Nevada corporation); and Kilpatrick & Cody (a partnership). Defendants Roy F. Coppedge, III and Walter F. Payne, Jr. filed motions to dismiss separate from the other defendants and these motions were granted by the district court and judgment filed thereon January 3, 1990.

2. The complaint also alleged pendent state law claims for actual and constructive fraud, breach of fiduciary duty, breach of contract, ordinary and gross negligence, and conspiracy.

3. After determining that Nobles' federal securities law claims could not withstand defendants' motion to dismiss, the district court dismissed without prejudice Nobles' pendent state law claims for lack of jurisdiction.

## I.

This dispute arose out of Nobles' investment in a cable television system ("the System"). In 1984, Nobles purchased ten limited partnership units of Aiken Cablevision, Ltd. ("the Partnership") for $5,000 as part of a registered public offering of 11,000 limited partnership units. The general partners were defendants First Carolina Communications, Inc. ("First Carolina") and E.B. Chester, Jr. The proceeds from the sale of the limited partnership units were to be used in connection with acquiring, upgrading, and expanding the System. A copy of the prospectus for the offer ("the 1983 Prospectus") and an amended and restated limited partnership agreement ("the Partnership Agreement") were provided to Nobles. The public offering was concluded in February 1984, and the business began operations.

Eventually, the general partners determined that it was appropriate to sell all of the Partnership's assets which consisted primarily of the System. The general partners, after obtaining an appraisal of the value of the System and a fairness opinion on the appraisal, notified the limited partners by a letter dated October 9, 1986 of the decision to sell the assets. The letter explained that no vote, consent, or approval of the limited partners would be sought as such was unnecessary under the Partnership Agreement.

In the ensuing transaction ("the 1986 Transaction"), the Partnership transferred the System to F.C. Aiken, Inc., its wholly owned subsidiary. F.C. Aiken, Inc. was then merged into F.C. Barnwell, Inc., a wholly owned subsidiary of First Carolina. F.C. Barnwell, Inc. then redeemed F.C. Aiken, Inc. stock leaving F.C. Barnwell, Inc. with the System and the Partnership with the cash proceeds from the stock redemption. By December 31, 1986, the Partnership was dissolved in accordance with the Partnership Agreement, and each limited partner received cash in exchange for limited partnership units. In January 1987, Nobles received a check for $7,700 in payment for the ten limited partnership units he had purchased for $5,000 in 1984.

On June 20, 1989, Nobles instituted the present action alleging violations of federal securities laws. Defendants filed a motion to dismiss for failure to state a claim upon which relief could be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On December 18, 1989, the district court granted defendants' motion to dismiss on the ground that the alleged misrepresentations and omissions in various documents supplied to Nobles by the defendants did not violate federal securities laws. The sole issue on appeal is whether the district court erred in granting defendants' motion to dismiss pursuant to Rule 12(b)(6). After considering the record in this case, the applicable law, and hearing oral arguments, we find that the district court's order of dismissal was correct, and we affirm.

## II.

Nobles alleges violations of sections 10, 13, and 14 of the Securities Exchange Act of 1934 ("the 1934 Act") and the rules and regulations promulgated thereunder. These provisions make it clear that an allegation of misrepresentation, deception, or nondisclosure is a threshold element essential to stating a cause of action. *See Schreiber v. Burlington Northern, Inc.*, 472 U.S. 1, 12, 105 S.Ct. 2458, 2464–65, 86 L.Ed.2d 1 (1985); *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 477–79, 97 S.Ct. 1292, 1302, 51 L.Ed.2d 480 (1977); *Kas v. Financial General Bankshares, Inc.*, 796 F.2d 508, 513 (D.C.Cir.1986); *Panter v. Marshall Field & Co.*, 646 F.2d 271, 282 (7th Cir.), *cert. denied*, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981). A plaintiff must also allege misrepresentations which are "material." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976); *Walker v. Action Indus., Inc.*, 802 F.2d 703, 706 (4th Cir.1986), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1000 (1987).

Section 10(b) of the 1934 Act prohibits any manipulative or deceptive device or contrivance in connection with the purchase or sale of any security. 15 U.S.C. § 78j(b). Rule 10b–5 makes it unlawful to "make

any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading ... in connection with the purchase or sale of any security." 17 C.F.R. 240.10b–5 (1989). Section 13(e)(1) prohibits purchases of equity securities by the issuer of such securities in contravention of Securities and Exchange Commission rules and regulations adopted to define and prevent "fraudulent, deceptive, or manipulative" acts and practices. 15 U.S.C. § 78m(e). Rule 13e–3(b)(1)(ii) makes it unlawful for an issuer, in connection with a transaction governed by Rule 13e–3, "[t]o make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. 240.13e–3(b)(1)(ii) (1989). Finally, Section 14(e) of the 1934 Act covers tender offers and provides in pertinent part:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation.

15 U.S.C. § 78n(e).

Nobles points to two time periods in which he alleges material misrepresentations or omissions were made which violated federal securities laws. We will first consider the alleged misrepresentations made in the 1983 Prospectus and then address Nobles' allegations of misrepresentations and omissions made with regard to the 1986 Transaction.

## A. The 1983 Prospectus

■ Nobles asserts that the 1983 Prospectus was materially misleading because

it implied that his limited partnership interest was a long-term investment rather than, in effect, a loan to the general partners while they determined whether to purchase the System for their own benefit. Nobles' argument is based on the fact that the 1983 Prospectus stated that the Partnership's objectives were "to obtain, over the long term, capital appreciation in the value of the System and equity build-up through debt reduction." However, as the district court correctly found, the 1983 Prospectus, which Nobles attached to the complaint as an exhibit, was not misleading as to the possibility that the Partnership's assets could be sold to any party and that the Partnership would thereafter be dissolved as provided in the Partnership Agreement. The 1983 Prospectus stated:

*Sale or Incorporation of the System.* The General Partners may, in their sole discretion, sell any or all of the Partnership's assets, including without limitation, the System or any part thereof. The General Partners also may, in their sole discretion, incorporate the business of the Partnership, or cause the transfer of all or any portion of the business or assets of the Partnership to any corporation in exchange for its stock or securities or may cause the combination of all or any portion of the business or assets of the Partnership with another company or business without dissolving the Partnership. Upon liquidation of the Partnership, stock or other securities acquired in an incorporation or exchange would be allocated among the Partners on the basis of their fair market value.

The 1983 Prospectus contained two additional references to the possibility that the investment in the System would not extend to the full term allowed by the Partnership Agreement. First, it stated that the Partnership "will be dissolved and its affairs wound up as soon as practicable upon the occurrence of ... the sale or other disposition of all or substantially all of the Partnership assets." Second, the 1983 Prospectus' section on federal income taxation discussed the prospect of the Partnership liquidating all of its assets during a limited period of time. We find that the district

court was correct in ruling that the 1983 Prospectus was not misleading with regard to the possibility that the investment in the System would not extend to the full term allowed by the Partnership Agreement.

 Nobles also argues that the 1983 Prospectus was misleading in that it did not reveal that First Carolina, a general partner, would, in effect, purchase the System from the Partnership. However, as the district court correctly determined, the 1983 Prospectus expressly addressed the possibility of such a transaction:

> *Interested Party Transactions.* The Partnership has entered into agreements described herein, and may enter into additional agreements, with the General Partners and their affiliates.... Thus, a conflict of interest could arise between the General Partner's fiduciary duties to the Partnership and their capacity as, or affiliation with, a party contracting with the Partnership.

While the sale of Partnership assets to a wholly owned subsidiary of First Carolina may present issues of state law, it does not, given the clear language of the 1983 Prospectus, constitute a misrepresentation that would implicate sections 10(b), 13(e), or 14(e) of the 1934 Act.

**B. The 1986 Transaction**

 Nobles' second claim of federal securities law violations involves alleged misrepresentations and omissions made with regard to the 1986 Transaction in which the assets of the Partnership were sold to F.C. Aiken, Inc.[4] However, regardless of whether defendants in fact made misrepresentations or omissions, we find that they were not actionable under federal securities laws because they were not, as a matter of law, material. As stated above, materiality of misrepresentations or omission is an essential element of the federal securities claims at issue in this case. As the Supreme Court set out in *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976), an omission is material if "there is a substantial likelihood

that a reasonable shareholder would consider it important in deciding how to vote." *Id.* at 449, 96 S.Ct. at 2132. While *TSC* involved a claim under section 14(a) of the 1934 Act, courts have imposed a similar materiality requirement in cases involving claims under section 10(b), 13(e), and 14(e). *Basic Inc. v. Levinson*, 485 U.S. 224, 230–32, 108 S.Ct. 978, 982–84, 99 L.Ed.2d 194 (1988); *Piper v. Chris–Craft Indus., Inc.*, 430 U.S. 1, 36 n. 23, 97 S.Ct. 926, 946 n. 23, 51 L.Ed.2d 124 (1977); *Missouri Portland Cement Co. v. H.K. Porter Co.*, 535 F.2d 388, 393 (8th Cir.1976). In this case, neither the 1983 Prospectus nor the Partnership Agreement gave Nobles any decision-making power with regard to the 1986 Transaction. In short, Nobles had no choice but to sell his limited partnership interest, and thus, any misrepresentation or omission made to him with regard to such transaction could not, as a matter of law, have been material. As the district court correctly noted, the "fundamental purpose" of the 1934 Act is to implement a "philosophy of full disclosure." *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 478, 97 S.Ct. 1292, 1303, 51 L.Ed.2d 480 (1977). "[O]nce full and fair disclosure has occurred, the fairness of the terms of the transaction is at most a tangential concern of the statute." *Id.* Accordingly, we find that the district court was correct in ruling that, while the 1986 Transaction may raise issues of state law, the representations regarding the Transaction which were made to Nobles did not implicate sections 10(b), 13(e), or 14(e) of the 1934 Act.

For the foregoing reasons, we find that the district court properly granted defendants' Rule 12(b)(6) motion to dismiss.

AFFIRMED.

---

**4.** Specifically, Nobles alleges that the Schedule 13E–3 filed in connection with the 1986 Transaction failed to comply with the general instructions for completing the Schedule and thus constituted a misrepresentation or omission actionable under federal securities laws.