Arthur R. MYERS, II, Mary J. Myers, Arthur R. Myers, III, Plaintiffs–Appellants,

v.

Robert FINKLE, Stephen Wetter, Paul Kaplan, George Allen, III, Jack Bleiberg, Michael Banker, F. Wayne Holton, Paul Forsythe, Julius Finkle, Frank Convertini, James Goldslager, Lee Weinberg, John Does 1 Through 20, formerly known as FKL Associates, FKL Associates, d/b/a Finkle & Company, formerly known as Exec Associates, Defendants–Appellees,

and

Lawrence N. Frankel, Defendant.

No. 90–1892.

United States Court of Appeals, Fourth Circuit.

Argued May 10, 1991.

Decided Nov. 27, 1991.

Norman Rifkind, Beigel & Sandler, Ltd., Chicago, Ill., argued (Herbert Beigel, Stephen D. Sharp, Philip Fertik, Beigel & Sandler, Ltd., on brief), for plaintiffs-appellants.

Stephen Atherton Northup, Mays & Valentine, Richmond, Va., argued (Wayne Lustig, Mays & Valentine, on brief), for defendants-appellees.

Before PHILLIPS and WILKINS, Circuit Judges, and KAUFMAN, Senior District Judge for the District of Maryland, sitting by designation.

## OPINION

WILKINS, Circuit Judge:

Arthur R. Myers, II, his wife, Mary J. Myers, and their son, Arthur R. Myers, III, instituted this action against an accounting firm and its partners (collectively "Finkle"). The Myers alleged violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j(b) (West 1981), Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 (1990), and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.A. §§ 1961-68 (West 1984 & Supp.1991). They also asserted state law claims for fraud, breach of fiduciary duty, and negligence. The district court granted summary judgment in favor of Finkle on the securities claims, dismissed the RICO claims, and declined to exercise pendent jurisdiction over the state claims. *Myers v. Finkle*, 758 F.Supp. 1102 (E.D.Va.1990). Because we conclude that the evidence, viewed in the light most favorable to the Myers, raises material issues of fact regarding alleged violations of section 10(b) and Rule 10b-5, we reverse in part, affirm in part, and remand.

## I.

For purposes of our review, the following summary of facts is presented in a light most favorable to the Myers. In 1977 Finkle began performing accounting services for the Myers that included preparation of their individual and corporate income tax returns. In 1981 Finkle advised the Myers that they could reduce their income tax liability by investing in real estate limited partnerships as tax shelters. Recommending specific partnerships in which Finkle had a financial interest, Finkle assured the Myers that the investments would result in an "economic profit" in addition to tax benefits. The Myers relied on this advice and followed Finkle's recommendations.

From 1981 to 1985 the Myers invested over $4.8 million in 15 real estate limited partnerships specifically recommended by Finkle. For each investment, the partnership sent the Myers a private placement memorandum describing the risks and prospects of the real estate project being developed by that limited partnership. The private placement memoranda were generally sent to the Myers after Finkle presented them with the necessary investment documents for execution and the investment transaction was completed. The Myers took substantial deductions for tax purposes as a result of losses incurred by the partnerships, but did not realize any monetary return on their investments. The limited partnerships are now in severe financial distress. The Myers claim as damages

the amount of their investments, lost use of the funds invested, and consequential damages. A more detailed statement of the facts may be found in the opinion of the district court. *Myers*, 758 F.Supp. at 1104–06.

## II.

■ Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In determining whether this showing has been made, the court must assess the evidence in a light most favorable to the party opposing the motion. *Charbonnages de France v. Smith*, 597 F.2d 406 (4th Cir.1979). The appellate standard of review of a grant of summary judgment is de novo. *Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1167 (4th Cir.1988).

Section 10(b) of the 1934 Act prohibits the use of any manipulative or deceptive device or contrivance in connection with the purchase or sale of any security. 15 U.S.C.A. § 78j(b); *see generally Nobles v. First Carolina Communications, Inc.*, 929 F.2d 141 (4th Cir.1991). Rule 10b–5 provides that it is unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading ... in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b5. "The elements of a Rule 10b–5 cause of action are: (1) the defendant made a false statement or omission of material fact (2) with scienter (3) upon which the plaintiff justifiably relied (4) that proximately caused the plaintiff's damages." *Bruschi v. Brown*, 876 F.2d 1526, 1528 (11th Cir.1989).

■ For purposes of this appeal, Finkle concedes that the Myers have established all elements of their claim except justifiable reliance. The Myers contend that this concession, coupled with the existence of material issues of fact regarding the justifiable reliance element, made summary judgment inappropriate. A determination of whether an investor may be justified in relying on oral representations that conflict with contemporaneous written statements in the investor's possession requires a consideration of all relevant factors, including:

(1) [t]he sophistication and expertise of the plaintiff in financial and securities matters; (2) the existence of long standing business or personal relationships; (3) access to relevant information; (4) the existence of a fiduciary relationship; (5) concealment of the fraud; (6) the opportunity to detect the fraud; (7) whether the plaintiff initiated the stock transaction or sought to expedite the transaction; and (8) the generality or specificity of the misrepresentations.

*Foremost Guar. Corp. v. Meritor Sav. Bank*, 910 F.2d 118, 123–24 (4th Cir.1990) (quoting *Kennedy v. Josephthal & Co.*, 814 F.2d 798, 804 (1st Cir.1987)). Because no single factor is dispositive, consideration of all factors is necessary. *Bruschi*, 876 F.2d at 1529.

■ In determining whether the Myers were justified in relying on Finkle's oral representations, we are presented with an unusual factual situation in which the oral representations are contradicted by warnings contained in the private placement memoranda. The Myers concede that they "did not study" these documents. In our view, knowledge of information should be imputed to investors who fail to exercise caution when they have in their possession documents apprising them of the risks attendant to the investments. Investors are charged with constructive knowledge of the risks and warnings contained in the private placement memoranda. *See Zobrist v. Coal–X, Inc.*, 708 F.2d 1511, 1518 (10th Cir.1983). Consequently, in evaluating the various factors relevant to justifiable reliance, the conduct of the Myers must be examined as if they were aware of the warnings. *Id.*

■ The first factor regarding justifiable reliance involves a consideration of the sophistication of the Myers and their experience in financial and investment matters. A review of the affidavits addressing this

issue demonstrates their contradictions: in summary, the Myers claim to be inexperienced in investment matters and to have been unfamiliar with tax shelters, while Finkle claims that the Myers have a substantial net worth and operate a successful family-owned seafood business. The district court expressly acknowledged that "[t]he level of the Myers' sophistication is a material issue of fact as to which there is a genuine dispute." 758 F.Supp. at 1108. However, the court viewed the Myers' apparent wealth as dispositive of the issue of sophistication. We disagree. While wealth may be an important factor, other criteria such as age, education, professional status, investment experience, and business background may also be relevant. *See Kennedy*, 814 F.2d at 804–05 (wealthy attorneys with considerable investment experience were sophisticated); *see generally* Fletcher, *Sophisticated Investors Under the Federal Securities Laws*, 1988 Duke L.J. 1081, 1149–53 (listing numerous factors relevant to a determination of sophistication).

The district court also ruled that Finkle did not owe a fiduciary duty to the Myers and that the Myers did not have long-standing business or personal relationships with Finkle. 758 F.Supp. at 1106–07. Relying on *Allen Realty Corp. v. Holbert*, 227 Va. 441, 318 S.E.2d 592 (1984), the court held that because Finkle was employed for the purpose of rendering tax and accounting services, its fiduciary duty was limited to these areas and did not extend to investment advice given in conjunction with these services. *Id.* We do not read *Allen Realty* to support this holding. Rather, *Allen Realty* stands for the proposition that under Virginia law, a fiduciary duty arises " 'when special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence.' " 318 S.E.2d at 595 (quoting *H–B Ltd. Partnership v. Wimmer*, 220 Va. 176, 257 S.E.2d 770, 773 (1979)). The Myers allege that they were social friends of Robert Finkle and other partners of the firm and that members of the firm spent considerable amounts of

time working closely with the Myers on business matters. They further allege that Finkle rendered accounting services to them for four years prior to the initiation of the investment transactions and served as their accountants for a total of at least ten years. While Finkle conceded several of these facts and contested others, the Myers presented sufficient evidence to raise a genuine issue of material fact on this issue.

The evidence is also contradictory regarding the Myers' access to relevant information. The Myers allege that the subscription documents were sent to them for their signature in blank immediately prior to tax deadlines, thus precluding careful consideration of the information they contained. They additionally claim that they did not receive private placement memoranda for the offerings until several months after they signed the subscription documents and invested in the limited partnerships. Finkle contends that the memoranda and other offering materials were provided to the Myers prior to each investment and that financial projections were reviewed with the Myers or their representative. While we express no opinion as to how these disputed factual issues will ultimately be resolved, it would be improper to attribute knowledge of the memoranda to them prior to a determination of whether they had meaningful access to the documents. *Cf. Foremost*, 910 F.2d at 122 nn. 7–8 (knowledge attributed to insurers who, although unable to review private placement memorandum prior to insuring partnership loans, were permitted to review comparable memorandum for an existing partnership).

Finally, the Myers have raised issues of fact regarding whether they initiated or sought to expedite the transactions. Finkle claims that the Myers initiated the transactions by indicating an interest in avoiding tax liability by investing in the partnerships. However, the Myers contend that for each transaction Finkle called them during the final preparation stage of their tax returns, advised them to invest in the partnerships, and directed them to

promptly execute and return the subscription documents.

We conclude that of the eight factors to be weighed in determining whether reliance was justified, the Myers have raised genuine issues of material fact regarding at least five. While the issues presented ultimately may be resolved against them, resolution by summary judgment was thus inappropriate.

### III.

■ The Myers contend that the district court erred in dismissing their RICO claims for failure to state a claim on which relief could be granted, *see* Fed.R.Civ.P. 12(b)(6), finding that the Myers failed to sufficiently allege the person, pattern, or racketeering activity elements of a RICO cause of action, 758 F.Supp. at 1111–13. With respect to the pattern requirement, the court found that the predicate acts were related but found that the Myers' allegations regarding investment advice given to them by Finkle failed to satisfy the continuity prong of the pattern requirement. *Id.* We agree. *See Menasco, Inc. v. Wasserman*, 886 F.2d 681 (4th Cir.1989). Moreover, the Myers are unable to rely on their allegations that Finkle deceived others because "[t]hese allegations lack the specificity needed to show a 'distinct' threat of continuing racketeering activity." *Id.* at 684. Because we hold that the district court properly concluded that the Myers failed to sufficiently allege a RICO pattern, we need not address the alternative grounds relied on by the court.

Our decision to remand compels the district court to reconsider its refusal to exercise pendent jurisdiction over the state law claims.

**REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.**