Michael F. MALONE, et al., Plaintiffs,

v.

MICRODYNE CORP., et al., Defendants.

Civ. A. No. 92–1515–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

May 24, 1993.

See also 148 F.R.D. 153.

Michael Letaw Shor, David & Hagner, Washington, DC, for plaintiffs.

Judith Elaine Beach, Anthony Tobias Pierce, Akin, Gump, Strauss, Hauer & Feld, Washington, DC, for defendants.

## MEMORANDUM OPINION

HILTON, District Judge.

This matter came before the court following the completion of the plaintiff's evidence on the defendants' Motion for Judgment as a Matter of Law pursuant to Rule 50 of the Federal Rules of Civil Procedure. This is a class action suit brought by purchasers of defendant Microdyne Corporation's common stock seeking damages of $8.9 million from Microdyne and two corporate officers, Chairman, President, and Chief Executive Officer Philip Cunningham and Executive Vice–President and Treasurer Christopher Maginniss. Microdyne is a Maryland corporation with offices in Alexandria, Virginia.

■ Plaintiffs allege that the defendants mislead the investment public in violation of section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b–5 with a series of overly optimistic public statements regarding the marketing prospects of a new Microdyne computer product, the NetWare Access Server/NetWare Asynchronous Communications Server ("NAS/NACS"), introduced in 1992.[1]

■ Rule 10b–5 makes it unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading ... in connection with the purchase of a sale of any security." 17 C.F.R. § 240.10b–5 (1987). To succeed in a claim arising under Rule 10b–5, the plain-tiffs must prove six essential elements: (1) a misstatement or omission (2) of a material (3) fact (4) with scienter (5) upon which the plaintiff justifiably relied (6) that proximately caused the plaintiff's damages. *Myers v. Finkle*, 950 F.2d 165, 167 (4th Cir.1991). Because the plaintiffs presented no evidence that the seven statements at issue were misstatements or omissions by the defendants, judgment as a matter of law is warranted against the plaintiffs.

■ Most of the statements plaintiffs allege to be actionable are forward-looking opinions concerning the impact of NAS/NACS sales on Microdyne's future performance. The Second and Seventh Circuits have concluded that forward-looking statements generally cannot be "false" or "misleading." *See DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir.1990) (Easterbrook, J.) ("there is no 'fraud by hindsight.'") *quoting Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978) (Friendly, J.) The Ninth Circuit has adopted the position that fraud actions for forward-looking statements are permissible only when there is no reasonable basis for the forward-statement and no undisclosed facts tending seriously to undermine the statement's accuracy. *In re Apple Computer Securities Litigation*, 886 F.2d 1109, 1113 (9th Cir.1989).

■ Even applying the more liberal Ninth Circuit standard, the plaintiffs provided no evidence at trial that the defendants did not genuinely believe the statements, that there was no reasonable basis for the belief or that the defendants were aware of undisclosed facts tending seriously to undermine the accuracy of the statement. *See In re Adobe Systems, Inc. Securities Litigation*, 787 F.Supp. 912, 919 *citing Apple*, 886 F.2d at 1113; *McLean v. Alexander*, 599 F.2d 1190, 1198 (3d Cir.1979);

In *Apple*, the company introduced a new computer which ultimately proved to be unsuccessful. The court found that in regard to certain statements made by defendant, namely that the company had "unequalled strength, experience and expertise," the new computer product was "a significant breakthrough," "success should continue," and that its forecasting process had been "refined," a rational jury could not find them materially misleading. In making this determination, the court considered whether there were sound historical and factual bases for each of the statements at the time they were made. The court determined that the company had established a successful track record and that there were no indications that this success would not continue, a new computer product was a promising, innovative product-in-development, and Apple had refined its planning process. Therefore, the court ruled that there were no genuine issues as to these statements upon which a jury could find Apple liable. In *Adobe*, another case involving a computer firm, the court found that there was a reasonable basis as a matter of law for defendants' earnings projections that later turned out to be wrong.

In another "projections" case, *In re Kulicke & Soffa Industries, Inc. Securities Litigation*, 697 F.Supp. 183, 186–187 (E.D.Pa. 1988), plaintiffs alleged that a statement pre-

---

**1.** Defendants Cunningham and Maginniss are also charged with violating § 20(a) of the Securities and Exchange Act, 15 U.S.C. § 78t(a) (1982) as "controlling" persons who caused Microdyne to commit the alleged securities fraud. Without "primary" liability under § 10, there can be no "secondary" controlling person liability under § 20. *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 279 (3d Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992).

dicting sales and earnings which did not come to pass was false and misleading because the statement was made in the face of a declining "book-to-bill ratio." Recognizing the difficulty of rendering forecasts months ahead and continued optimistic articles in the trade press about the company's projected performance, the court concluded that the forecasts were made with a genuine and reasonable belief and granted summary judgment for the defendants.

Plaintiffs attack the statement by Microdyne Chairman Philip Cunningham on February 12, 1992 to the Dow Jones News Wire that he was "comfortable" with the forecast of Tucker Anthony market analyst Bill Becklean's forecast of Microdyne's fiscal year earnings. Plaintiffs provided no evidence that Mr. Cunningham did not genuinely believe his statement, that there was no reasonable basis for his belief or that he was aware of any undisclosed facts tending seriously to undermine the accuracy of the statement. Actually, the evidence was that Mr. Becklean was knowledgeable about the industry and Microdyne had increased its sales dramatically each year during the prior years. The industry press was predicting an "explosion" in the market for computer networking products like the NAS/NACS. Thus, Mr. Cunningham's statement that he was "comfortable" with Mr. Becklean's forecast was completely reasonable, and in fact, given Microdyne's past performance and the expected market surge for computer networking products, rather pallid.

The next two statement plaintiffs allege were misleading were an April 23, 1992 press release that Microdyne had achieved record sales for its second quarter ended March 31, 1992 and Microdyne's Form 10-Q for the second quarter, filed on May 15, 1992. Mr. Cunningham noted in the April 23, 1992 press release that:

> We're very pleased by our performance in the second quarter. Network connectivity hardware and software product sales grew substantially. We had more than $13.5 million in data communications product sales during the quarter, 70 percent higher than the comparable quarter a year ago and a substantial increase over the first

quarter of fiscal 1992. Moreover, we plan to introduce several new network connectivity products before the end of fiscal 1992, providing a platform for additional growth in 1993.

The May 15, 1992 Form 10-Q stated:

> Management believes that the initial products produced under this new agreement with Novell, NetWare Access Server (NAS), and its companion product NetWare Asynchronous Communication Service (NACS) are the first of their kind to be introduced in the market. Management anticipates that these products will generate substantial revenues in the future; however, there can be no certainty that this expectation will be met.

Plaintiffs allege that both statements about sales during the second quarter and future sales prospects were misleading because they treated NAS sales as revenues without stating the existence of a right to return the products. This was consistent with past accounting procedures Microdyne had already disclosed to the public, such as in its 1991 Form 10-K, noting that the company recognizes revenue for accounting purposes upon the shipment of goods. Defendants are not required to disclose information already known to the market. *Apple*, 886 F.2d at 1115. The optimistic predictions about future sales in the May 15, 1992 Form 10-Q included the caveat that "there can be no certainty that this expectation will be met" and could not be materially misleading because the statement "bespoke caution." *Luce v. Edelstein*, 802 F.2d 49 (2d Cir.1986); *Polin v. Conductron Corp.*, 552 F.2d 797 (8th Cir.), *cert. denied*, 434 U.S. 857, 98 S.Ct. 178, 54 L.Ed.2d 129 (1977). The plaintiff has thus not shown that these two statements that merely reported sales that had occurred and anticipated continued sales had no reasonable basis as required to constitute a misstatement.

The next alleged misstatement occurred on June 15, 1992 when Microdyne announced in a press release that NAS/NACS sales were substantially less than anticipated in its earlier projections. Mr. Cunningham said that Microdyne had "misjudged the length of the product's selling cycle ... we expected to

close sales in 30 to 60 days. Instead, the product is taking 90 days or longer to sell in quantity.... Our estimate of the product's eventual success has not changed." Mr. Cunningham also cautioned investors that "[i]t is too early to say with any certainty what Microdyne's sales and earnings will be in the fourth quarter ... because the Net-Ware Access Server by Microdyne is such a major component of sales, our profitability forecast is largely controlled by revenue from this product." This announcement caused the price of the stock to fall considerably. Plaintiffs allege that this announcement was insufficiently pessimistic because NAS/NACS returns were not reported and criticize the suggestion that the selling cycle was being lengthened. The evidence is clear that at this point in time, NAS/NACS returns had not yet occurred and that sales personnel reported that sales were slow. Along with Mr. Cunningham's caveat which "bespoke caution," *Luce*, 802 F.2d at 49, nothing in this statements was false and misleading. Because the press release accurately reported reduced sales projections, plaintiffs have failed to show that there was no reasonable basis for the statements.

The next alleged misstatement was a press release on July 21, 1992 which stated the most dire conditions of the NAS/NACS program. This information was further reported in Microdyne's Third Quarter Report to shareholders distributed in August 1992. It did express some optimism that the program might have some life in it, but included a clear warning which limited the optimism. *Luce*, 802 F.2d at 49. This press release precipitated a further $1.00 drop in the price of the Microdyne stock. Plaintiffs allege that information about returns should have been included in this press release. Although the exact wording "we had X number of returns" was not included, the release disclosed problems selling the product, how poor sales were, how poor estimates were going to be, and that the product was not selling. Stating in the press release that the product was back in Microdyne's warehouse, instead of in a dealer's warehouse would not have provided any additional information about poor NAS/NACS sales other than what Microdyne already provided. *See Walker v. Action In-*

*dustries, Inc.,* 802 F.2d 703, 710 n. 12 (4th Cir.1986) (Ervin, J.), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1000 (1987) (holding that the only information that must be disclosed is information necessary to make disclosed information not misleading.) Similarly, Microdyne had no duty to disclose that NAS/NACS production was temporarily halted in July. *Id.* Plaintiffs therefore failed to show that Microdyne had no reasonable basis for the statements in the press release or in the August shareholder report.

Plaintiffs also allege that Microdyne's Form 10–Q for June 30, 1992 filed with the S.E.C. on August 12, 1992 contained similar misleading statements about NAS/NACS sales as those in the July 21, 1992 press release. This report disclosed both the disappointed NAS/NACS sales and expressed some optimism about future prospects that was tempered with the caveat that "there is no certainty that this expectation will be met." This report contained no misleading statements on these points for the same reasons that the July 21, 1992 press release contained none.

In addition, plaintiffs note that the June 30, 1992 Form 10–Q stated that Microdyne had $1,009,000 in cash on June 30, 1992. The bulk of this cash reflected borrowings on Microdyne's line of credit at Crestar Bank. Without citing any authority, plaintiffs assert that this "window dressing" is misleading. Yet, Microdyne's balance sheet accurately listed the note payable and the 10–Q reported the line of credit. The net liquid assets available to the company were therefore unchanged and clearly disclosed. *Cf. Walker,* 802 F.2d at 710 n. 12. Thus, the June 30, 1992 Form 10–Q contained no misleading statements.

For the foregoing reasons, plaintiffs have failed to provide evidence that the alleged statements by Microdyne Corporation and its officers from February to August 1992 were misleading. By not establishing this element, plaintiffs have failed to make out a *prima facie* case of 10b–5 securities fraud. *Myers,* 950 F.2d at 167. Because there was no legally sufficient evidentiary basis for a reasonable jury to have found for plaintiffs,

judgment as a matter of law is entered in favor of defendants.