64 F.3d 657
 1995-2 Trade Cases P 71,108, RICO Bus.Disp.Guide 8878
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Jeannine Z. LEONARD; J. Gilbert Leonard; Daniel J.
Leonard, Plaintiffs-Appellants,
and
John E. Leonard, Plaintiff,
v.
J.C. PRO WEAR, INCORPORATED, d/b/a Pro Jersey; Craig
Katchen; James L. O'Llaughlin; Montgomery Ward &
Company, Defendants-Appellees.
 No. 94-1498.
 United States Court of Appeals, Fourth Circuit.
 Aug. 29, 1995.
 
 ARGUED: David Thomas Ralston, Jr., LEONARD, RALSTON, STANTON & DANKS, Washington, DC, for Appellants. William Judah Shieber, COVINGTON & BURLING, Washington, DC, for Appellee Montgomery Ward; John A.C. Keith, David John Gogal, BLANKINGSHIP & KEITH, P.A., Fairfax, VA, for Appellees Pro Wear, et al. ON BRIEF: Thomas J. Stanton, Mary Gayle Holden, Seanan B. Murphy, LEONARD, RALSTON, STANTON & DANKS, Washington, DC, for Appellants. Robert D. Wick, COVINGTON & BURLING, Washington, DC, for Appellee Montgomery Ward; Elizabeth V.C. Morrogh, BLANKINGSHIP & KEITH, P.A., Fairfax, VA, for Appellees Pro Wear, et al.
 Before WIDENER and MICHAEL, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Appellants Jeannine, Gilbert, and Daniel Leonard (plaintiffs)[1] appeal from the district court's grant of summary judgment on numerous counts of a complaint alleging RICO activity, 18 U.S.C. Secs. 1961-1968, several antitrust violations, 15 U.S.C. Sec. 1 (Sherman Act), 15 U.S.C. Sec. 13(c) (Robinson-Patman Act), a state-law illegal business conspiracy, Va.Code Secs. 18.2-499 to -500, state-law false advertising, Va.Code Sec. 18.2-216, and breach of contract on the part of J.C. Pro Wear, Inc., Montgomery Ward & Co., Inc., James O'Laughlin, and Craig Katchen. For the reasons stated below, we affirm the district court's grant of summary judgment.
 
 
 2
 Our review of the grant of a motion for summary judgment is de novo. Sylvia Development Corp. v. Calvert County, 48 F.3d 810, 817 (4th Cir.1995). "Summary judgment is justified if, from the totality of the evidence presented, including pleadings, depositions, answers to interrogatories, and affidavits, the court is satisfied that there is no genuine factual issue for trial and the moving party is entitled to judgment as a matter of law." Sylvia Development, 48 F.3d at 817; see Fed.R.Civ.P. 56(c). In addition, this court must " 'draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion,' " Sylvia Development, 48 F.3d at 817 (quotation omitted), but "the non-moving party must do more than present a 'scintilla' of evidence in its favor.... [It] must present sufficient evidence ... that 'reasonable jurors could find by a preponderance of the evidence' for the non-movant....[I]f the evidence is 'merely colorable' or 'not significantly probative,' a motion for summary judgment may be granted." Sylvia Development, 48 F.3d at 818 (quotations omitted).
 
 
 3
 Taking all facts and reasonable inferences in the light most favorable to plaintiffs, the facts of this case are as follows. Pro Wear, con trolled by Katchen and O'Laughlin and Karen, O'Laughlin's wife, entered into a Sidetrips Licensing Agreement with Montgomery Ward in February 1988, by which Pro Wear would lease space (kiosks) in Montgomery Ward's stores to sell licensed athletic clothing and related items. The Sidetrips Agreement was superseded by a Master Licensing Agreement in November 1989. Under both agreements, Montgomery Ward would receive a fee of 12-13% of gross sales from each Pro Jersey kiosk, and the Master Agreement included a provision for minimum rent as well. Pro Wear would then solicit and procure sublicensees to operate the Pro Jersey kiosks in certain Montgomery Ward stores.
 
 
 4
 In August 1988, Pro Wear advertised in several Virginia newspapers regarding the opportunity to "own your own" sports apparel shop. The advertisement represented that there would be "no minimum rent," and that one could "net $50-$70,000 1st year" for a "$39,500 investment." Plaintiffs responded to the advertisement and began discussions with Pro Wear regarding the purchase of Pro Jersey licenses. During these discussions, and in advertising and promotional documents mailed by Katchen and O'Laughlin on behalf of Pro Wear, a number of representations were made to the Leonards, including that they could net $50 to $70,000 annually per kiosk, that they needed no prior retail sales experience to operate a kiosk, and that they could build up equity in each kiosk and freely sell their ownership interest at a profit. In addition, the Pro Wear defendants omitted several facts during these negotiations, including that the defendants conducted no market analysis of the proposed kiosks, that operation of a kiosk entailed financial risks, and that resales of Pro Jersey businesses were subject to approval by Montgomery Ward.
 
 
 5
 Plaintiffs entered into several sublicense contracts with Montgomery Ward by signing supplements to the licensing agreement stating their understanding that they were bound by the provisions of the licensing agreement.
 
 
 6
 Plaintiffs immediately began experiencing financial difficulties in operating their kiosks. As a result, in October 1992 O'Laughlin wrote a letter to Montgomery Ward suggesting that Montgomery Ward "[s]hrink [Gilbert Leonard's store in] Springfield A.S.A.P." Montgomery Ward did so. In addition, Pro Wear refused to obtain or to guarantee payment for merchandise for several of John and Jeannine Leonard's kiosks, despite an alleged agreement to do so, upon learning that the Leonards owed Pro Wear a sum of money.
 
 
 7
 Moreover, beginning in April 1990, there was a dispute over the equity interest of sublicensees in the Montgomery Ward-Pro Wear licenses and the power of sublicensees to transfer or sell their interests. In July 1990, Montgomery Ward advised Pro Wear, in accordance with the Licensing Agreements, that sublicensees had no right to sell their sublicenses but that Montgomery Ward would permit such sales during a single 90-day period, after which it would enforce the transfer restrictions in the Master Agreement. Pro Wear notified sublicensees that, after the 90-day period, they could sell their fixtures and furnishings for a price not to exceed $25,000 and their inventories as they wished, but that "you can not sell your lease," and that any party interested in assuming a Pro Jersey kiosk would have to be approved by Pro Wear and Montgomery Ward.
 
 
 8
 Finally, Pro Wear, acting as the plaintiffs' agent for the procurement of supplies, accepted commissions or discounts from several suppliers on the purchase of inventories by or for the plaintiffs. These commissions and discounts were undisclosed to the plaintiffs. In exchange for these commissions and discounts, Pro Wear guaranteed plaintiffs' payment of the purchase price for supplies, although plaintiffs claim that these guarantees were required by the contracts between Pro Wear and plaintiffs.
 
 
 9
 The plaintiffs' businesses failed, and they suffered significant financial losses. They brought suit against Pro Wear, Montgomery Ward, Katchen, and O'Laughlin on numerous legal theories. On cross-motions for summary judgment, the district court granted summary judgment to the defendants on all but one count of the complaint, which count was subsequently settled. The district court entered a final order and the plaintiffs appealed therefrom.
 
 I. Breach of Contract
 
 10
 Plaintiffs allege that their contract with Pro Wear consisted of a composite of various oral and written agreements, the newspaper advertisements, and the abovementioned representations and omis sions, among others. This argument is without merit. The Sidetrips and the Master Licensing Agreements, both of which were provided to, read by, and subscribed by plaintiffs, contained integration clauses, stating that no prior understandings were part of the agreement and no subsequent modifications could be made unless in writing and signed by all parties. There were several ancillary written agreements made between Pro Wear and the sublicensees, but none of them is relevant to the claims made by plaintiffs.
 
 
 11
 Moreover, all actions allegedly taken by the defendants after plaintiffs entered the Licensing Agreements were properly within the terms of those agreements. Even if the plaintiffs believe they were fraudulently induced to enter the Licensing Agreements, they did not raise that claim and we express no opinion as to it. We find no evidence in the record to support plaintiffs' claim of breach of contract by Pro Wear. Nothing in the licensing agreements or the ancillary contracts promised plaintiffs any return of capital, any equity interest, or any maximum investment. The district court so found, and we agree. We, like the district court, are unwilling and unable to release plaintiffs from the terms of their bargain because they claim that they did not understand the plain language of those terms. Accordingly, we affirm the decision of the district court that there was no valid claim of breach of contract against Pro Wear.
 
 
 12
 In this context, we will now address plaintiffs' remaining claims.
 
 II. RICO
 
 13
 Plaintiffs allege that Katchen, O'Laughlin, and Montgomery Ward participated in Pro Wear's solicitation of potential investors for the purpose of defrauding plaintiffs and others, in violation of 18 U.S.C. Sec. 1962(c) (count one), and that Montgomery Ward collected and received income derived from a RICO enterprise, in violation of 18 U.S.C. Sec. 1962(a) (count two). We agree with the district court that plaintiffs' evidence of a pattern of racketeering activity is insufficient to sustain these claims.
 
 
 14
 Regarding Katchen and O'Laughlin, we agree with the district court that no pattern of racketeering activity has been established by the plaintiffs. For such a pattern to exist, there must be "a threat of continued criminal activity," H.J. Inc. v. Northwestern Bell, 492 U.S. 229, 239 (1989), and a showing that "ongoing unlawful activities ... pose a special threat to social well-being." Menasco, Inc. v. Wasserman, 886 F.2d 681, 684 (4th Cir.1989).
 
 
 15
 In contrast, the scheme allegedly engaged in by Katchen and O'Laughlin was narrowly focused, with the single purpose of procuring the Leonards' investment in sublicenses for the Montgomery Ward licenses. See International Data Bank, Ltd. v. Zepkin, 812 F.2d 149, 155 (4th Cir.1987). There is no evidence in the record that anyone other than the Leonards was defrauded or was the subject of a scheme to defraud by Katchen and O'Laughlin. See Myers v. Finkle, 950 F.2d 165, 169 (4th Cir.1991); Menasco, 886 F.2d at 684; Zepkin, 812 F.2d at 154 (prospectus defrauding ten investors does not constitute RICO pattern). Moreover, the Leonards have presented no evidence of fraud other than the advertisements, solicitation materials, representations, and omissions made by Pro Wear in inducing the Leonards to invest in the kiosks, all of which occurred over a seven-month period. This period of time has been held to be insufficient to constitute a RICO pattern in those circuits that have addressed the issue. See Primary Care Investors, Seven, Inc. v. PHP Healthcare Corp., 986 F.2d 1208, 1215 (7th Cir.1993) (eleven-month scheme "insubstantial" under RICO); Hughes v. Consol-Pennsylvania Coal Co., 945 F.2d 594, 609-11 (3d Cir.1991) (twelve months insubstantial for RICO purposes), cert. denied, 60 U.S.L.W. 3600, 3812, 3815 (U.S. June 1, 1992); see also H.J. Inc., 492 U.S. at 242 ("Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the continuity] requirement."); Menasco, 886 F.2d at 684 (noting that the fraudulent transaction in that case "took place over approximately one year," and stating that "[c]learly, these acts do not constitute" a RICO pattern). While we do not hold that a seven-month scheme is per se insufficient to establish a RICO claim, we think it evident on these facts that the district court properly granted summary judgment to Katchen and O'Laughlin on count one.
 
 
 16
 Accordingly, we find insufficient evidence that Montgomery Ward was participating in RICO activity. We also note that there is almost no evidence in the record that Montgomery Ward knew of any of the alleged acts of fraud committed by Katchen and O'Laughlin. We thus affirm the grant of summary judgment as to Montgomery Ward on count one.
 
 
 17
 Because there was insufficient evidence of any RICO activity from which Montgomery Ward could have received proceeds, the district court was correct in granting summary judgment to Montgomery Ward on count two.
 
 III. Antitrust
 A. Sherman Act
 
 18
 The district court granted summary judgment to the defendants on plaintiffs' Sherman Act claims because there was no injury to competition and because defendants' actions with respect to these claims were permissible under both Licensing Agreements.
 
 
 19
 Initially, we agree with the district court that the defendants' restrictions on the resale or assignment of plaintiffs' sublicenses were permissible under the plain language of the Licensing Agreements. Plaintiffs allege in count three that these contract restrictions constitute an unlawful restraint of trade. This assertion is patently without merit. Contrary to plaintiffs' assertion, they did not bargain for the right to freely assign their interests. Plaintiffs have demonstrated no anticompetitive effects of the contractual no-assignment restrictions. We agree with the reasoning of Clarke v. Amerada Hess Corp., 500 F.Supp. 1067, 1072 (S.D.N.Y.1980), that "[t]he problem with [plaintiff's] theory is that ... these 'restraints' flow from one source: [Montgomery Ward's] retention of property rights in the dealership. " The contractual prohibition on assignment or resale in this case is not an antitrust violation, and we affirm the district court's grant of summary judgment on count three.
 
 
 20
 In count four, plaintiffs allege that the $25,000 limit on the resale price of sublicensees' fixtures and furnishings constitutes illegal price-fixing and is a per se violation of the Sherman Act. Initially, there is no record evidence that Montgomery Ward was in any way involved in the establishment of this $25,000 limit on furniture and fixtures resales, and count four was properly dismissed as to it. Thus, there is no evidence of any combination or conspiracy between Pro Wear and Montgomery Ward with respect to the $25,000 limit. See, e.g., Stephen Jay Photography, Ltd. v. Olan Mills, Inc., 903 F.2d 988, 994 (4th Cir.1990) ("Concerted activity is an essential element of a section 1 claim.... To survive a motion for summary judgment in an antitrust conspiracy case, a plaintiff must establish that there is a genuine issue of fact whether the defendant entered into an illegal conspiracy."). So there is no liability of Montgomery Ward on that account.
 
 
 21
 To the extent that Pro Wear may unilaterally have purported to impose a vertical restraint on the resale price of its sublicensees' fixtures and furniture, it did so without any authority whatsoever, contractual or otherwise. Plaintiffs purchased their fixtures and furniture independently of the Licensing Agreements, and so far as this record shows remained free to remove their fixtures and furnishings and resell these items at whatever price they might obtain on the open market. Although Pro Wear's conduct may be in violation of its contract with plaintiffs or other law, we have no doubt that the unilateral and unauthorized imposition of a resale price maximum on plaintiffs' fixtures and furnishings does not constitute a contract, combination, or conspiracy in restraint of trade for purposes of the antitrust laws. Accordingly, the district court correctly granted summary judgment to defendants on count four.
 
 
 22
 Plaintiffs do not argue in their briefs any impropriety of the district court's grant of summary judgment on count five, which alleged an illegal price-fixing agreement between Pro Wear and one of the Pro Jersey suppliers, Starter, so we affirm the district court's grant of summary judgment on that count.
 
 B. State-Law Business Conspiracy
 
 23
 Count eight alleges that Montgomery Ward and Pro Wear conspired to reduce the values of plaintiffs' businesses and force them out of business, in violation of the Virginia Business Conspiracy Act, Va.Code Secs. 18.2-499 to -500. It is apparent from the record that plaintiffs' businesses were not operating successfully from the outset, and thus that Montgomery Ward had a business justification for being concerned about the loss of profits from those businesses. The only evidence that Montgomery Ward actually interfered with the operation of any of plaintiffs' businesses, and thus that Montgomery Ward and Pro Wear conspired to do anything at all, is the letter from O'Laughlin to a Montgomery Ward employee referring to Gilbert Leonard as a "scum bag" and suggesting that the size of Leonard's store in Springfield, Virginia be reduced, followed nine days later by a letter from Montgomery Ward to O'Laughlin informing him that, in accordance with the terms of the license agreement, Montgomery Ward was reducing the size of the kiosk in Springfield. Montgomery Ward had a contractual right to make such a reduction in the leased space on seven days' notice, which notice was given. Thus, Montgomery Ward's decision to reduce the size of the Springfield location was a valid exercise of its contractual rights.
 
 
 24
 However, plaintiffs argue that the recent opinion in Commercial Business Systems, Inc. v. Bellsouth Services, Inc., 453 S.E.2d 261 (Va.1995), lowers the standard of proof of a business conspiracy under Virginia law by making it possible to establish an illegal business conspiracy by proving that lawful acts were committed with the motive to "willfully and maliciously injur[e] another in his ... trade [or] business." Va.Code Secs. 18.2-499, 500. In the Commercial Business case, the court reversed and remanded the trial court's grant of summary judgment to defendants on the business-conspiracy claims because the Virginia Business Conspiracy statutes do not require proof of actual malice but only legal malice, i.e. that a defendant "acted intentionally, purposely, and without lawful justification, " 453 S.E.2d at 267, and because it is not necessary for a plaintiff to show that defendant's "primary and overriding purpose was to injure [plaintiff's] trade or business," (emphasis omitted) in a case where "all of [defendant's] motives were illegitimate." 453 S.E.2d at 267.
 
 
 25
 In contrast, in this case plaintiffs have presented no evidence of improper motive. Although the O'Laughlin letter clearly casts Gilbert Leonard in a derogatory light, the mere fact that O'Laughlin did not like Leonard, standing alone, cannot constitute evidence of an unlawful motive. Moreover, the letter also makes reference (albeit cryptic) to Leonard's poor business acumen, thus evidencing a legitimate motive for reducing the size of his Springfield operation. Plaintiffs present no other evidence of any unlawful motive, and thus no evidence that defendants acted in concert with malice, as required by the Business Conspiracy Act. See Commercial Business, 453 S.E.2d at 267.
 
 
 26
 The Commercial Business case did not change the requirement that in Virginia, "[t]here can be no conspiracy to do an act which the law allows. Thus, to survive demurrer, an allegation of conspiracy ... must at least allege an unlawful act or an unlawful purpose." Hechler Chevrolet, Inc. v. General Motors Corp., 337 S.E.2d 744, 748 (Va.1985) (affirming lower court's sustaining of demurrer to conspiracy claim where franchisor legally terminated or refused to renew franchise with no unlawful purpose). Plaintiffs have simply failed to meet their burden of showing any unlawful motive or legal malice in defendants' performance of what was undoubtedly a legal act.
 
 C. Robinson-Patman
 
 27
 Plaintiffs assert in count ten that Pro Wear violated Section 2(c) of the Robinson-Patman Act, 15 U.S.C. Sec. 13(c), which proscribes the payment or receipt of "anything of value as a commission, brokerage or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise," whether the payment of such compensation is made to a party to the transaction or to an "agent, representative, or other intermediary" of a party other than the party making the payment. The district court found that Pro Wear's acceptance of commissions and discounts from the sublicensees' suppliers was not price discrimination for purposes of Section 2(c) and that in any event the commissions and discounts were paid for services rendered by Pro Wear, namely the guarantee by Pro Wear of sublicensees' payment for the supplies. We agree with the district court that there was no antitrust injury alleged by plaintiffs in this case, see Metrix Warehouse, Inc. v. Daimler-Benz AG, 828 F.2d 1033, 1046-47 (4th Cir.1987), cert. denied, 486 U.S. 1017 (1988); 15 U.S.C. Sec. 15(a), because there is no evidence that plaintiffs paid more than their competitors as the result of these discounts and commissions to Pro Wear. See Metrix Warehouse, 828 F.2d at 1046-47 ("[I]t was MBNA's burden to demonstrate a causal connection between Metrix's unlawful program and its lost profits.").
 
 
 28
 Moreover, plaintiffs argue that the evidence supports a claim for commercial bribery under Section 2(c). Assuming without deciding that such a claim exists, see Stephen Jay Photography, 903 F.2d at 993 (discussing the existence vel non of a commercial-bribery claim under Section 2(c)), we find no evidence to support it. There is no evidence that the commissions paid to Pro Wear were intended to or did unlawfully influence or corrupt Pro Wear's conduct. In fact, plaintiffs do not dispute that the commissions were paid in exchange for Pro Wear's guarantee of the sublicensees' payment for suppliers' goods, but argue instead that Pro Wear was contractually obligated to guarantee the sublicensees' purchases in any event.[2]
 
 
 29
 We do not think that a pre-existing contractual obligation is relevant to an analysis under Section 2(c), which states that such commissions are legal if given in exchange "for services rendered in connection with the sale or purchase of ... merchandise." It seems clear that the sublicensees' suppliers paid Pro Wear in exchange for Pro Wear's guarantee, a service rendered in connection with the sale of the suppliers' merchandise. Some sublicensees had this service, some did not. The payments were in exchange for services rendered, whether Pro Wear's acceptance of them was proper under agency principles or not.
 
 
 30
 Thus, the plaintiffs have not shown any evidence of "actual injury of a type that Section 2(c) was designed to prevent." Metrix, 828 F.2d at 1046. The district court's grant of summary judgment to Pro Wear on count ten is accordingly affirmed.
 
 IV. False Advertising
 
 31
 Plaintiffs assert in count nine that Pro Wear's advertisements in Virginia newspapers constituted false advertising under Va.Code Secs. 18.2-216 (making false advertising unlawful) and 59.1-68.5 (giving a private right of action under Section 18.2-216). The district court found that this claim was barred by the two-year statute of limi tations applicable to fraud claims, Va.Code Sec. 8.01-243(A), and we agree.
 
 V.
 
 32
 The plaintiffs' brief lists six principal assignments of error, three of which are subdivided into eleven sub-assignments of error. We have mentioned each with particularity where the assignment deserves mention. In all events, we are of opinion that none of the assignments of error, whether or not mentioned with particularity or otherwise, are meritorious.
 
 
 33
 The judgment of the district court is accordingly
 
 
 34
 AFFIRMED.
 
 
 
 [1]
 The original plaintiffs were John, Jeannine, Gilbert, and Daniel Leonard. John Leonard has not appealed from the final order of the district court, and thus we need not decide the validity of the order of dismissal of John's claims with prejudice, which was entered after the notice of appeal was filed in this action. Defendants claim that because John Leonard's claims have been dismissed, his wife, Jeannine, has no interest in any sublicense and thus is not a proper party to this appeal. Because the complaint alleged that Mrs. Leonard did purchase interests in several of the sublicenses, Mrs. Leonard's claims do not depend upon the survival of her husband's. Thus, the defendants' suggestion that Mrs. Leonard is not a proper party to this appeal is a challenge to the federal courts' subject matter jurisdiction on the basis of her standing to sue these defendants. Such a challenge cannot be waived. See Smith v. County of Albemarle, 895 F.2d 953, 954 (4th Cir.), cert. denied, 498 U.S. 823 (1990); Fed.R.Civ.P. 12(h)(3)
 However, the Pro Wear defendants admitted in their answer that Jeannine Leonard did purchase, with her husband, several interests in Pro Jersey kiosks, and the record evidence cited by the defendants to refute this jurisdictional fact does not establish that Mrs. Leonard owned no interest in any Pro Jersey location. Whether she owned an interest in each of them, as the complaint alleges, need not be decided here, because that is not a jurisdictional question but an issue to be proved on the merits of her claims. It is sufficient for purposes of determining jurisdiction that Mrs. Leonard has established without dispute that she owned some interest in the kiosks. We thus reject the challenge to Mrs. Leonard's standing to sue these defendants.
 
 
 [2]
 The Appendix references relied upon by plaintiffs (J. A.1120, 1127-35) do not support in fact that Pro Wear had otherwise contractually agreed to guarantee the plaintiffs' purchase of merchandise