886 F.2d 681
 RICO Bus.Disp.Guide 7321
 MENASCO, INC.; Lucky Two, Inc., Plaintiffs-Appellants,
v.
Barry M. WASSERMAN; Sounion Petroleum; Spheric Petroleum,
a Texas Corporation; Alaina, Ltd., a Maryland Corporation;
Ankar, Ltd., a Maryland Corporation; Lande Realty, Ltd., a
Maryland Corporation, Defendants-Appellees.
 No. 88-3073.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 4, 1988.
Decided Sept. 28, 1989.
 
 Andrew L. Hartman (Arvin E. Rosen, Siskind, Burch, Grady & Rosen, on brief) for plaintiffs-appellants.
 Harry Levy (Joshua R. Treem, Schulman, Treem, Kaminkow & Gilden, P.A., on brief) for defendants-appellees.
 Before HALL, PHILLIPS, and WILKINSON, Circuit Judges.
 WILKINSON, Circuit Judge:
 
 
 1
 In this case we once again address the requirement that plaintiffs prove a "pattern" of racketeering activity under the RICO statute. Plaintiffs have sued defendants for violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Sec. 1961, et seq., and on state common law grounds of deceit, negligent misrepresentation, and breach of contract, arising out of the purchase of Texas oil development investments. The district court dismissed plaintiffs' action pursuant to Fed.R.Civ.P. 12(b)(6) because it failed to allege a pattern of racketeering activity. The district court also denied plaintiffs leave to amend their complaint. Fed.R.Civ.P. 15. We hold that although the complaint presently fails to allege a pattern of racketeering activity under RICO, the plaintiffs should be allowed to amend their complaint in light of the Supreme Court's recent analysis of RICO's pattern requirement in H.J. Inc. v. Northwestern Bell Telephone Co., --- U.S. ----, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).
 
 I.
 
 2
 Because the complaint was dismissed pursuant to Fed.R.Civ.P. 12(b)(6), we assume the facts alleged in the complaint are true.
 
 
 3
 In September of 1984, defendant Barry M. Wasserman met with Benjamin I. Hendin and Frank S. Setren, two physicians, to discuss opportunities in the oil business. Wasserman is an attorney and principal of Sounion Petroleum, Inc., a Maryland corporation engaged in investing in oil and gas prospects. At the meeting, Wasserman explained that investors would share both development costs and net revenues, and obtained permission to form plaintiff companies, Menasco, Inc. and Lucky Two, Inc., which Drs. Hendin and Setren would serve as presidents and directors.
 
 
 4
 In October of 1984, Wasserman informed Drs. Hendin and Setren that their partner in Texas was Cascade Oil, Inc., and its principal Robert L. Leon. In November of 1984, Leon, with Wasserman's consent, offered the plaintiffs additional acreage in a White Flat field in Nolan County, Texas. Plaintiffs allege that Wasserman and Sounion misrepresented to them that as partners in the venture, they would all pay the same price for each percentage point purchased in oil and gas properties while, in fact, Sounion inflated the price it charged plaintiffs to approximately two to five times the price it paid. Plaintiffs also allege that Wasserman engaged in other improprieties and misrepresentations with respect to their purchase of investment shares.
 
 
 5
 In addition, plaintiffs allege that Wasserman: (1) solicited from them assignments of Rights of Action which he used to benefit Sounion, and not the plaintiffs; (2) conspired with the lessor of a well to terminate a lease on the well, and renegotiated the lease to the detriment of plaintiffs and to the benefit of Sounion; and (3) transferred from Sounion to Spheric Petroleum, Inc. and then to Alaina, Ltd., Ankar, Ltd., and Lande Realty, Ltd., a substantial interest in the oil wells in which Sounion was involved so as to shelter his funds and render himself judgment proof. As a direct consequence of Wasserman's conduct plaintiffs allege they have suffered a loss of $177,347.79.
 
 
 6
 On October 1, 1987, plaintiffs filed suit in the United States District Court for the District of Maryland alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Sec. 1961, et seq., and state law claims of deceit, negligent misrepresentation and breach of contract. They named as defendants Wasserman, Sounion Petroleum, Inc., Spheric Petroleum, Inc., Alaina, Ltd., Ankar, Ltd., and Lande Realty, Ltd. Each defendant moved to dismiss the RICO count for failure to state a claim upon which relief can be granted, and failure to plead the RICO count with requisite specificity.
 
 
 7
 Finding that plaintiffs "have presented no facts whatsoever" connecting defendants Spheric, Alaina, Ankar, and Lande Realty to the alleged RICO violation, the district court dismissed the claim as to those defendants. The court further held that in regard to the claim against Wasserman and Sounion the complaint failed to allege a "pattern of racketeering activity," an essential element in any RICO action. 18 U.S.C. Secs. 1961(5) & 1962(c). Inasmuch as the RICO claim was the sole basis for federal jurisdiction, the remaining state law counts were dismissed without prejudice to the right to pursue those claims in state court.
 
 
 8
 Subsequent to the dismissal, plaintiffs moved the district court to reconsider its order and to grant leave to amend their complaint. The court denied these motions, and this appeal followed.
 
 II.
 
 9
 Plaintiffs first claim that the district court erred in finding that they failed to allege a pattern of racketeering activity. We hold, however, that no pattern of activity was alleged.
 
 
 10
 The "pattern" requirement is more than incidental to the operation of the RICO statute. In providing a remedy of treble damages for injury "by reason of a violation of" RICO's substantive provisions, 18 U.S.C. Sec. 1964(c), Congress contemplated that only a party engaging in widespread fraud would be subject to such serious consequences. See S.Rep. No. 617, 91st Cong., 1st Sess. 158 (1969) U.S.Code Cong. & Admin.News ("One isolated 'racketeering activity' was thought insufficient to trigger the remedies provided under the proposed chapter, largely because the net would be too large and the remedies disproportionate to the gravity of the offense."); 116 Cong.Rec. 35193 (1970) (RICO "not aimed at isolated offender") (statement of Rep. Poff). The pattern requirement in Sec. 1961(5) thus acts to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions; that treble damage suits are not brought against isolated offenders for their harassment and settlement value; and that the multiple state and federal laws bearing on transactions such as this one are not eclipsed or preempted.
 
 
 11
 The Supreme Court recently visited RICO's pattern requirement. H.J. Inc. v. Northwestern Bell Telephone Co., --- U.S. ----, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). The H.J. Inc. Court reaffirmed that "to prove a pattern of racketeering activity a plaintiff ... must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." Id. 109 S.Ct. at 2900 (emphasis in original). Predicate acts are related if they have " 'the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' " Id. at 2901, quoting 18 U.S.C. Sec. 3575(e).
 
 
 12
 Continuity, in turn, refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." Id. at 2902 (emphasis added). To satisfy the continuity element, a plaintiff must show that "the predicates themselves amount to, or ... otherwise constitute a threat of, continuing racketeering activity." Id. at 2901 (emphasis in original). Significantly, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." Id. at 2902. See also id. (continuity requires activity over a "substantial period of time"); id. at n. 4 (continuity requires "long-term criminal activity"). Thus, predicate acts must be part of a prolonged criminal endeavor.
 
 
 13
 In articulating the "continuity plus relationship" test, the H.J. Inc. Court endorsed a commonsensical, fact-specific approach to the pattern requirement. Id. at 2899, 2902. Accordingly, the H.J. Inc. Court rejected, as had this court and most other circuits, the rigid notion that predicate acts form a pattern only when they are part of separate illegal schemes. 109 S.Ct. at 2899-2901 & n. 3. See also International Data Bank, Ltd. v. Zepkin, 812 F.2d 149, 155 (4th Cir.1987). The Court observed that "multiple predicates within a single scheme" may indeed constitute criminal activities which have long-term and widespread consequences--the very acts RICO was intended to prohibit. 109 S.Ct. at 2899. Predicate acts which arise under a single scheme, then, may be a pattern for RICO purposes if they are continuous and related. Again, however, the test is commonsensical, not formulaic. Id. Thus, the existence of a single scheme alone, while not dispositive, can be relevant to the continuity inquiry. See id. at 2901 ("proof that a RICO defendant has been involved in multiple criminal schemes would certainly be highly relevant to the inquiry into the continuity of the defendant's racketeering activity").
 
 
 14
 Here, plaintiffs' allegations fail to satisfy the continuity prong of RICO's pattern requirement. Defendants' actions were narrowly directed towards a single fraudulent goal. They involved a limited purpose: to defraud Menasco, Inc. and Lucky Two, Inc. with respect to their oil interests. They involved but one perpetrator: Wasserman. They involved but one set of victims: Menasco and Lucky Two. Finally, the transaction took place over approximately one year. Clearly, these acts do not constitute "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." Zepkin, 812 F.2d at 155.
 
 
 15
 Nor does anything in the defendant's actions suggest "a distinct threat of long-term racketeering activity, either implicit or explicit." H.J. Inc., 109 S.Ct. at 2902. Whether such a threat inheres in a defendant's predicate acts "depends on the specific facts of each case." Id. Plaintiffs contend that Wasserman's fraudulent acts constitute "a regular way of conducting [their] ongoing legitimate business," id., thus threatening future continuance. They rely on two sets of allegations to establish defendant's ongoing scheme: the existence of dummy corporations designed to divert Sounion's fraudulent assets, and the fact that Wasserman committed fraudulent acts against "various individuals." These allegations lack the specificity needed to show a "distinct" threat of continuing racketeering activity. The complaint fails to supply any details regarding either the operation of the dummy corporations or the identity or activity of the other persons purportedly defrauded by the defendant. Plaintiffs' conclusory allegations fail to satisfy Fed.R.Civ.P. 9(b)'s requirement that averments of fraud be stated with particularity. See Schreiber Distributing Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1400-01 (9th Cir.1986) (plaintiff must plead "circumstances of the fraudulent acts that form the alleged pattern of racketeering activity with sufficient specificity pursuant to Fed.R.Civ.P. 9(b)"). They therefore cannot be relied upon to show a continuing pattern of fraudulent acts.
 
 
 16
 A comparison of this case with H.J. Inc. reveals the lack of continuing racketeering activity here. In H.J. Inc., respondents Northwestern Bell, its officers, the Minnesota Public Utilities Commission, and others participated in a systematic rate hike scheme on a scale that dwarfs the present venture. The H.J. Inc. defendants' numerous predicate acts spanned at least six years. During that period, the defendants employed a variety of stratagems including cash payments to commissioners, offers of future employment, meals, parties, and airline, sporting, and entertainment tickets. Thousands of Northwestern Bell customers suffered long term, multiple, and repeated injuries. The scale on which racketeering is conducted may provide some indication of its ongoing nature. The number of victims, as well as the duration and magnitude of the scheme to defraud, plainly distinguish H.J. Inc. from the instant case.
 
 
 17
 In the face of allegations of far more widespread racketeering than alleged here, we have held that no pattern of racketeering activity existed and that plaintiffs must seek recourse outside the RICO statute. In Zepkin, for example, we found there was no pattern where there was but a single limited fraudulent purpose which involved ten investors. In Brandenburg v. Seidel, 859 F.2d 1179 (4th Cir.1988), by contrast, the court assumed that a pattern existed, without actually finding so, because there were over 22,000 victims and because defendants had committed a series of independent acts all having distinct criminal ends in themselves. Other circuits have also failed to find a pattern of racketeering activity in cases where the alleged fraud was of the dimensions in this case. See e.g., Torwest DBC, Inc. v. Dick, 810 F.2d 925, 928-29 (10th Cir.1987); Medallion Television Enterprises, Inc. v. SelecTV of California, Inc., 833 F.2d 1360, 1362-64 (9th Cir.1987); Jones v. Lampe, 845 F.2d 755, 757-58 (7th Cir.1988); Lipin Enterprises, Inc. v. Lee, 803 F.2d 322, 323-24 (7th Cir.1986); Roeder v. Alpha Industries, Inc., 814 F.2d 22, 30-31 (1st Cir.1987).
 
 
 18
 This case presents a paradigm of one in which no pattern of racketeering activity is present. If the pattern requirement has any force whatsoever, it is to prevent this type of ordinary commercial fraud from being transformed into a federal RICO claim. Flip Mortgage Corp. v. McElhone, 841 F.2d 531, 538 (4th Cir.1988); HMK Corp. v. Walsey, 828 F.2d 1071, 1074 (4th Cir.1987). If we were to recognize a RICO claim based on the narrow fraud alleged here, the pattern requirement would be rendered meaningless. We refuse, as did H.J. Inc., to read the statutory term as surplusage. See also Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 500, 105 S.Ct. 3275, 3287, 87 L.Ed.2d 346 (1985) (RICO is "quite different from the original conception of its enactors" in part because of the failure of "courts to develop a meaningful concept of 'pattern' ").
 
 III.
 
 19
 Plaintiffs also argue that the district court abused its discretion in denying them leave to amend their complaint. We see no need to resolve that question, however, because plaintiffs must be permitted leave to amend their complaint in light of H.J. Inc.
 
 
 20
 Plaintiffs complained initially before this court that despite an absence of any prejudice to defendants they were denied leave to amend their complaint even once. The apparent basis of the district court's denial of leave to amend was one of futility. See Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). After H.J. Inc., this court requested supplemental briefing from the parties, in part to address the relevance of plaintiffs' proposed amendments in light of that decision. Plaintiffs claimed that if permitted leave to amend, they would clearly and unequivocally establish the existence of a pattern of racketeering activity. Specifically, plaintiffs would allege that Sounion had conveyed 97% of its interest to Spheric, which had then conveyed half of such interest to the remaining defendants. Further, plaintiffs would allege "that defendants employed the same scheme with respect to approximately 25 other Maryland individuals and corporations."
 
 
 21
 If these allegations are pled with the requisite particularity, they would satisfy H.J. Inc.'s requirement of a "regular way of conducting defendant's ongoing legitimate business," 109 S.Ct. at 2902, that carries with it a distinct threat of future racketeering activity. The absence of such an element is the defect in the present complaint. We believe that the H.J. Inc. decision counsels a remand of this action to give plaintiffs an opportunity to satisfy the continuity element of RICO's pattern requirement. H.J. Inc. focuses in detail upon continuity. Because plaintiffs lacked H.J. Inc.'s guidance on this point, they should be allowed to amend their complaint to try to come within its parameters.
 
 
 22
 REMANDED WITH DIRECTIONS.