LOWRY'S REPORTS, INC.

v.

LEGG MASON, INC., et al.

No. CIV. S 01–3898.

United States District Court,
D. Maryland.

Feb. 26, 2002.

Thomas W. Kirby, Bruce G. Joseph, Scott Eric Bain, Wiley Rein and Fielding, Washington, DC, for Lowry's Reports, Inc., plaintiffs.

Thomas H Dupree, Jr, Gibson Dunn and Crutcher LLP, Washington, DC, for Legg Mason, Inc., Legg Mason Wood Walker, Inc., defendants.

## MEMORANDUM AND ORDER

SMALKIN, Chief Judge.

This matter is before the Court on the defendants' Motion to Dismiss several of the counts of the complaint. The motion has been fully briefed, and no oral hearing is needed. Local Rule 105.6 (D.Md.2001)

The complaint alleges (which allegations are entitled to be taken as true on a motion to dismiss) that an individual employee of Legg Mason—though not always the same one—had, since 1992 (nine years before the complaint was filed) held an individual subscription to a copyrighted publication put out by the plaintiff, called *New York Stock Exchange Market Trend Analysis.* The complaint claims that, "at least since 1992," Legg Mason has made and distributed, both internally and externally, copies of the publication in question, without paying for more than one individual subscription.

Obviously, the plaintiff has stated a claim for violations of the Copyright Act, a proposition which, at this stage, the defendants do not contest. Defendants do, however, contest the various other claims, both *ex delicto* and *ex contractu,* asserted by the plaintiff in addition to the Copyright Act claims. The defendants' position has some merit, for reasons that follow.

 Looking first at the RICO claim, the Court notes that the Fourth Circuit has frequently recognized that RICO claims can be dismissed, on a Rule 12(b)(6) motion, where the complaint fails to allege the requisites of RICO-actionable racketeering activity under Fourth Circuit case law. *See, e.g., Menasco, Inc. v. Wasserman,* 886 F.2d 681 (4th Cir.1989). Clearly, although this complaint alleges a number of repeated violations of federal criminal statutes, it plainly fails to satisfy recently-reiterated Fourth Circuit case law requirements for establishing a pattern of racketeering activity. While an alleged RICO scheme based on mail or wire fraud will usually involve a number of separate uses of means of interstate commerce, that alone does not establish the requisite pattern. *See GE, Inv. Private Placement Partners v. Parker,* 247 F.3d 543, 549 (4th Cir.2001). Here, as in *Al–Abood v. El–Shamari,* 217 F.3d 225 (4th Cir.2000), the scheme was narrowly focused, involving only one "target" (the plaintiff) and does not implicate any threat of organized criminal activity outside "the heartland of fraud cases" sufficient to justify handling under RICO. *Id.* at 238. More to the point, just as in *Menasco, supra,* the defendants' alleged actions were directed toward a single fraudulent goal, involving only one limited purpose, only one perpetrator, and only one victim. This is no more than ordinary fraud; it is not RICO. *See Menasco,* 886 F.2d at 684–85; *see also Howard Oaks, Inc. v. Md. Nat'l. Bank,* 810 F.Supp. 674 (D.Md.1993)(granting Rule 12(b)(6) dismissal of RICO claim). Finally, the durational element asserted in this case is insufficient, in light of the absence of other hallmarks of a valid RICO claim, to state a cause of action under recent Fourth Circuit law, especially *Al–Abood, supra.* Although it is true that, in *Walk v. Baltimore & Ohio R.R.,* 890 F.2d 688 (4th Cir.1989), and *Morley v. Cohen,* 888 F.2d 1006 (4th Cir.1989), the Fourth Circuit found that RICO claims had been stated both in closed-end schemes and open-end schemes (like this one) on account of what appears solely to have been the duration of the scheme, such a purely durational approach is overly simplistic and outdated, in view of recent Fourth Circuit case law, especially *Al–Abood,* which took a more substantive approach to the issue as a whole, focusing on what is—and what is

not—within the heartland of a simple fraud, executed, as most are, with the aid of the mails and wires. Case law from other circuits also casts doubt on the continuing vitality of the purely durational approach of *Walk. See, e.g., W. Assocs. Ltd. P'ship v. Mkt. Square Assocs.,* 235 F.3d 629, 635–36 (D.C.Cir.2001) (eight-year time span; no RICO from that factor alone).

In short, this case alleges a simple fraud within the heartland of ordinary fraud cases, *i.e.,* no more than a scheme to cheat one paper on subscription fees. Thus, on the basis of the most recent pronouncements out of Richmond taking a common-sense approach to the scope of RICO, the Court will dismiss the RICO claim.

Thus, the Court hereby *dismisses* the plaintiff's RICO claim pursuant to FED. R. CIV. P. 12(b)(6), for failure to state a claim upon which relief can be granted. (Although there is no need separately to discuss it here, because plaintiff, in its opposition memo at 4 n. 2 abandons reliance on an "enterprise" claim, the defendants' contention that the plaintiff has failed to allege a sufficient RICO enterprise has merit.)

The defendants argue that the remainder of plaintiff's non-Copyright Act claims are preempted by the Copyright Act. Those claims are for breach of contract (the subscription contract), fraud, and unfair competition. They are, quite obviously, based on the same factual pattern that allegedly violated plaintiff's copyright, *i.e.,* the copying and distribution of plaintiff's publication without appropriate authorization.

If the defendants acted as alleged, they violated the Copyright Act, 17 U.S.C. § 301(a)(2001). The Copyright Act explicitly preempts "any ... right or equivalent right in any such work under the common law or statutes of any State." The Fourth Circuit has given a broad interpretation to the scope of Copyright Act preemption, citing the intention of Congress "to avoid the development of any vague borderline areas between State and Federal protection." *Berge v. Bd. of Trs. of the Univ. of Ala.,* 104 F.3d 1453, 1464 (4th Cir.1997) (citation omitted). Plaintiff's rights granted under the laws of Maryland, whether *ex contractu* or *ex delicto,* are equivalent to exclusive rights under the Copyright Act, and are thus preempted, *see Rosciszewski v. Arete Assocs., Inc.,* 1 F.3d 225, 229 (4th Cir.1993), unless they embody an additional element that makes them qualitatively different from the rights protected by the Act.

All of the state law rights asserted here emanate from the alleged wrongful reproduction and distribution of copies of the protected work, and, because the unauthorized reproduction and distribution of copyrighted work form the heartland of prohibited conduct under the Copyright Act, *see* 17 U.S.C. § 106, the additional elements involved in plaintiff's claims must involve elements that make a qualitative difference from the core conduct prohibited under the Copyright Act, *viz.,* unauthorized copying. *See Rosciszewski,* 1 F.3d at 230; *see also Berge,* 104 F.3d at 1464. Although both fraud and breach of contract claims have been held to have been preempted under the Copyright Act by this Court, *see Wharton v. Columbia Pictures Indus., Inc.,* 907 F.Supp. 144 (D.Md. 1995), as have claims of unfair competition, *see Costar Group Inc. v. LoopNet, Inc.,* 164 F.Supp.2d 688, 713 (D.Md.2001), in this case, the claims of breach of express contract and unfair competition (although not fraud) are qualitatively different from simple copyright violation.

■ As to the contract claim, the unique terms of the parties' express contract here essentially establishes a private law governing fair use of the copyrighted works

*inter partes*, which makes the claim qualitatively different from a simple copyright case, in which there is no "private law" defining what is and is not fair use of the work. Thus, the nature of the contractual right here asserted is qualitatively different from the bare restrictions imposed by the Copyright Act, and are not therefore preempted by that Act.

■ As to the unfair competition claim, to the extent that it sounds in what is referred to as the "hot news" doctrine (which is the only way plaintiff characterizes it), both legislative history and case law support the conclusion that there is present therein an extra element satisfying the qualitative differential requirement for non-preemption. *See* H.R.Rep. No. 94–1476 at 132 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5748; *see also Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 845 (2d Cir.1997). Plaintiff has adequately alleged the "direct competition" *sine qua non* for a "hot news" claim, but, of course, it will remain to be seen from discovery whether there is enough factual support for that claim to survive summary judgment after discovery.

■ Plaintiff's fraud claim, however, is no more than a statement that it had been cheated out of money it would have made had it been paid for the activities of copying and distribution of copies. That is qualitatively no different than a copyright claim, and it is therefore preempted.

For the reasons stated, plaintiff's claims, except its claims under the Copyright Act, for breach of express contract, and for unfair competition under the "hot news" theory, are hereby *dismissed*, with prejudice, for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).