**THE MARYLAND–NATIONAL CAPITAL PARK AND PLANNING COMMISSION, et al.  Plaintiffs**

v.

**Timothy B. BOYLE, et al.  Defendants**

**Civil No. H–01–3561.**

United States District Court,
D. Maryland.

May 23, 2002.

William C. Dickerson, Adrian R. Gardner, Maryland National Capital Park and Planning Commission, Riverdale, MD, for The Maryland-National Capital Park and Planning Commission, City of Takoma Park, Maryland.

Timothy F. Maloney, Joseph Greenwald and Laake PA, Greenbelt, MD, for Timothy B. Boyle, Jeffrey L. Pauley, Mobile Data Technologies, LLC.

Robert E. Scully, Jr., Rees Broome and Diaz PC, Vienna, VA, for Datalux Corporation.

Stephen D. Graeff, Lawrence E Carr, III, Carr Morris and Graeff, Washington, DC, for International Management Consulting, Inc.

## MEMORANDUM OPINION

ALEXANDER HARVEY, II, Senior District Judge.

The plaintiffs in this civil action are the Maryland–National Capital Park and Planning Commission (the "Commission") and the City of Takoma Park, Maryland ("Takoma Park"). Named as defendants are Timothy B. Boyle ("Boyle"), Jeffrey L. Pauley ("Pauley"), Mobile Data Technologies, LLC ("MDT"), Datalux Corporation ("Datalux") and International Management Consulting, Inc. ("IMCI").[1] There are eleven counts in the complaint, two of which are brought under federal law, and nine of which are brought under the common law of the State of Maryland. Jurisdiction is alleged to exist under 28 U.S.C. § 1331.[2]

Both Count I and Count II assert claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* Count I is styled "RICO–Enterprise A" and alleges that MDT was and is an enterprise within the meaning of RICO and that defendants violated 18 U.S.C. §§ 1962(a), (c) and (d). Count II is styled "RICO–Enterprise B" and alleges that an enterprise within the meaning of RICO was formed between MDT, IMCI and Datalux and that defendants have violated §§ 1962(a), (c) and (d). Counts III–XI allege claims under state law against one or more of the defendants for fraud, breach of contract, unjust enrichment, civil conspiracy, negligence and conversion.

Presently pending in the case is a motion to dismiss filed by defendants Boyle,

---

**1.** Also named as defendants are "John and Jane Doe Agents and Employees of Defendant Entities."

**2.** Supplemental jurisdiction of plaintiffs' state law claims is alleged to exist under 28 U.S.C. § 1367.

Pauley and MDT, and a separate motion to dismiss filed by defendant IMCI. Extensive memoranda in support of and in opposition to these motions have been filed by the parties.

Following its review of the pleadings and memoranda, this Court has concluded that no hearing is necessary for a decision on the pending motions. *See* Local Rule 105.6. For the reasons stated herein, the motion to dismiss of defendants Boyle, Pauley and MDT will be granted, and the motion to dismiss of defendant IMCI will also be granted. Pursuant to Rule 12(b)(6), F.R.Civ.P., Counts I and II of the complaint will be dismissed as to all named defendants, and the other Counts will be dismissed pursuant to 28 U.S.C. § 1367.[3]

# I

## Background Facts

The complaint is 39 pages in length and contains 165 paragraphs. Paragraphs 12 through 71 set forth in considerable detail the relationships between the Commission and the defendants and their dealings which led to the claims asserted here by plaintiffs. As alleged in the complaint, the background facts are as follows.[4]

The Commission is a bi-county government agency which was created by the Maryland General Assembly and which functions as a public body corporate. The Commission has the power to sue and be sued and to enter into contracts. The Commission's responsibilities include (1) planning for the physical development of the Maryland–Washington Regional Dis-

trict, located in Montgomery County and Prince George's County, Maryland; (2) acquiring, developing and maintaining various park and recreation facilities located within the District; and (3) operating the Prince George's County public recreation program. In addition, the Commission has established the Montgomery County Division of the Maryland–National Capital Park Police (the "Police Department"). The Police Department operates to further the Commission's statutory mandate to prevent crime, apprehend criminals and enforce criminal laws, motor vehicle laws and park regulations in and around the Commission's property in Montgomery County.

Defendants Boyle and Pauley were both previously employed with the Police Department's Management and Technology Unit (the "Unit"). Boyle, a Lieutenant worked in the Unit from September 28, 1997 until his resignation on May 19, 2000, and Pauley was a Sergeant in the Unit from March 3, 1998 until his resignation on May 19, 2000.

In 1995, Donald A. Deering, Boyle and Pauley's then commander, authorized pursuit of a Department of Justice grant which was intended to promote the more efficient use of law enforcement resources through automation and technology. The idea was to put laptop computers into police cruisers which would give officers quicker access to information and would allow them to write reports from their cruisers. The Department also envisioned having a computer aided dispatch system

---

**3.** Defendant Datalux has not responded to the complaint. However, the Court has been advised that a settlement has been reached between plaintiffs and defendant Datalux, and an Order has been entered by the Court dismissing plaintiffs' claims against that defendant.

**4.** In their briefs, both plaintiffs and defendants refer to various related events and occurrences not mentioned in the complaint. In ruling on the pending motions, the Court has not relied in any way on facts recounted in the parties' memoranda but not alleged in the complaint or in the exhibits attached thereto.

which would enable police cruisers to communicate with each other in real time, which would allow real time dispatches to police vehicles and which would permit direct inquiries into law enforcement criminal information systems and databases.

The Police Department obtained the federal grant and put out a request for proposals from vendors for a "turnkey project" (the "Project"). IMCI[5] was the successful bidder and was awarded the Project contract in April of 1997. Defendants Boyle and Pauley were assigned the responsibility for the development of the Project, including the procurement of computer products and services and administration of related contracts for their Unit. In April of 2000, the Commission was advised of certain irregularities relating to procurement activities undertaken by Boyle and Pauley in furtherance of the Project, as well as secondary employment activities of these two defendants. An investigation of the activities of Boyle and Pauley was then commenced, and these two police officers later resigned on May 19, 2000.

### (a)

### *Boyle, Pauley and MDT*

According to the complaint, Boyle and Pauley used their positions with the Commission to further their own private business interests. They organized a limited liability company, namely defendant MDT, and then used MDT as a means for obtaining commissions from various vendors who were supplying technology and computer services to the Commission and others. The activities of these two defendants led to a payment to IMCI which should not have been made and to the purchase of equipment from Datalux. Plaintiffs assert that the Datalux purchase did not involve the best equipment available, and that the purchase in question would not have occurred but for the influence of Boyle and Pauley. The decisions in question were made by or steered by Boyle and Pauley while they had a personal financial stake in the outcome, and Boyle and Pauley used their positions to promote the equipment of vendors with whom they had associated without disclosing to the Commission their personal relationship with these vendors.

On November 4, 1998, Boyle and Pauley had organized defendant MDT, and they were the only persons with an interest in that entity. Boyle and Pauley also organized the so-called Mobile Data Users Group ("MDUG"), which met for the first time in November 1998 at a Commission facility. MDUG was run and promoted by Boyle and Pauley on Commission time and used Commission resources. It was formed to provide a forum for representatives of law enforcement agencies whereby they might share information and ideas regarding the application of new technology in the law enforcement environment. According to the complaint, Boyle and Pauley formed MDUG to serve as a vehicle to surreptitiously promote their own private business interests. MDUG was used as a springboard for private marketing by Boyle and Pauley of vendor products to law enforcement agencies without the disclosure of their private pecuniary interests and without disclosing that their activities were neither known to, nor authorized by the Commission. The targets of their marketing efforts were police departments of counties and municipalities as well as other law enforcement agencies, including the police department of plaintiff Takoma Park.

---

**5.** IMCI is headquartered in Ashburn, Virginia and sells hardware, software and professional services to customers who desire to acquire and use computer equipment.

### (b)
### *IMCI*

In 1996, the Commission had requested proposals for the Project. The proposal submitted by IMCI was the one accepted, and on April 2, 1997 the Commission entered into a contract with IMCI for the design and implementation of an "Enterprise Digital Network for a Computer Aided Dispatch System."[6] Neither Boyle nor Pauley were employed with the Unit when the contract was signed, and it is not alleged that they were involved in the contract procurement or in the bidding which preceded the award.

For the contract price of $748,829.94, IMCI was to provide all hardware, software and labor to implement a functioning enterprise digital network. The contract cost specifically included the Orbacom System CRT console and Cerulean Law Enforcement Software. Payment of the contract price was to be made in stages, with the final 20% of the total contract value due at the final systems acceptance test and job completion sign-off. Failure to complete all work within 220 calendar days after the contract date would result in the assessment of liquidated damages against IMCI.

According to the complaint, IMCI committed a material breach of the contract by failing to complete the final contract objective within the time period specified. It is alleged that on November 24, 1998, Boyle improperly authorized the making of the final payment to IMCI in the amount of $149,765 even though the conditions of the contract had not been met. Plaintiffs assert that Boyle knew that the payment was improper but recommended it to further his own private business relationship with IMCI, that IMCI knew the payment was improper and conspired with Boyle and Pauley to secure the improper payment, and that submission of the approval documents constituted a material misrepresentation which the Commission relied upon in making the payment.

### (c)
### *Datalux*

In January of 1999, the Commission issued a request for pricing by various vendors of mobile equipment to be used for the Project. Boyle and Pauley drafted specifications for the requested equipment which mirrored products supplied by defendant Datalux.[7] Both Datalux and a company known as Data 911 submitted bids. At a meeting attended by the Commission's purchasing manager and members of the Montgomery County and Price George's County Park Police, Boyle strongly recommended the Datalux products. The Tacoma Park Police Department was also a target of defendants' marketing activities.

On March 15, 1999, the Montgomery County division ordered fifteen Datalux computers. Less than two weeks later, on April 1, 1999, MDT entered into an agreement with Datalux whereby MDT agreed to serve as a sales representative for Datalux.[8] Under the agreement, MDT was to receive commissions for equipment sold and in fact received commissions on Datalux's invoices to Takoma Park for computers sold to that plaintiff. The Commission and the other police departments were unaware of the relationship between Data-

---

**6.** A copy of the contract was attached to the complaint as an exhibit.

**7.** Datalux, with headquarters in Winchester, Virginia, manufactures and sells computer products.

**8.** A copy of that agreement was attached to the complaint as an exhibit.

lux and MDT. It is alleged that defendants Boyle, Pauley and MDT conspired to use Commission equipment and resources to promote their marketing efforts. According to the plaintiffs, if Boyle and Pauley had not steered them to the selection of Datalux equipment, they would have selected the Data 911 equipment which was a better product.

## II

### Counts I and II

In Count I of the complaint, defendant MDT is alleged to be an enterprise within the meaning of RICO and is referred to therein as "Enterprise A". This enterprise was allegedly formed for the objective of using the influence and positions of Boyle and Pauley with the Commission to benefit vendors and their employees, as well as Boyle and Pauley. Vendors participating in Enterprise A allegedly benefitted from the scheme by securing unauthorized compensation from the Commission, by improperly securing contracts and bids and by receiving shelter from scrutiny of their deficient and ineffective performance. It is asserted that Boyle, Pauley and MDT benefitted by receiving financial compensation as a result of their business relationships and opportunities for the exploitation of their positions with the Commission for their own personal benefit.

Plaintiffs contend that defendants engaged in a pattern of racketeering activity and committed predicate acts of mail fraud and wire fraud within the meaning of 18 U.S.C. §§ 1341 and 1343. It is alleged that Enterprise A and its pattern of racketeering continued for a substantial period of time until the Commission commenced an investigation. It is further alleged that the conduct would have continued unabated if there had not been the investigation in April of 2000.

Claiming that they were injured in their business or property by reason of defendants' violation of 18 U.S.C. §§ 1962(a), (c), and (d), plaintiffs in Count I seek damages in the amount of $3 million. They ask that this sum be trebled pursuant to § 1964, and that the Court award interest, costs, attorneys' fees and other relief pursuant to the statute.

Count II of the complaint contains similar allegations. In Count II, it is alleged that Enterprise B within the meaning of RICO was formed between MDT, IMCI and Datalux. Enterprise B was allegedly formed for the same objective as was Enterprise A. Once again, it is alleged that defendants engaged in a pattern of racketeering activity and committed predicate acts of mail fraud and wire fraud. The damages and other relief sought in Count II are the same as that claimed in Count I.

## III

### Applicable Principles of Law

Under Rule 12(b)(6), F.R.Civ.P., a defendant named in an action may file a motion to dismiss for "failure to state a claim upon which relief can be granted." It is well established that a motion to dismiss under Rule 12(b)(6) should be denied unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The issue in reviewing the sufficiency of the pleadings in a complaint is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims made. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Under RICO, a private civil action may be brought for the recovery of treble damages for violation of the statute's substan-

tive provisions. The relevant substantive provisions are found in 18 U.S.C. §§ 1962(a), (c) and (d).

Section 1962(a) provides that it shall be unlawful for a person who has derived income either directly or indirectly from a pattern of racketeering activity, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income in acquisition of any interest in, or the establishment or operation of, any enterprise engaged in, or the activities of which affect, interstate of foreign commerce. Section 1962(c) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Section 1962(d), provides that it shall be unlawful to conspire to violate the provisions of subsection (a) or (c). "A violation of § 1962(c) . . . requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. The plaintiff must, of course, allege each of these elements to state a claim." *Sedima, S.P.R.L v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

An "enterprise" is defined in § 1961(4) to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." A pattern of racketeering activity requires: "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." § 1961(5). As defined, "racketeering activity" includes any act

which is indictable under one of certain provisions of title 18 of the United States Code.

Although the commission of two prohibited acts may be enough to constitute a RICO violation, this is the minimum requirement and not necessarily enough. In *Sedima,* the Supreme Court rejected an overly restrictive interpretation of § 1964(c), which would have required a defendant to have been convicted of a predicate racketeering act and would have required the plaintiff to show a special racketeering injury in order to establish civil RICO liability. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 236, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

The Court in *Sedima* had stated that the expansive use of RICO appeared to be a result of the breadth of the predicate offenses, in particular the inclusion of mail, wire and securities fraud, and the failure of Congress to develop a meaningful concept of "pattern." *Id.* The Court in *H.J. Inc.,* undertook to develop a meaningful concept of "pattern," since Congress had done nothing further to define "pattern," after the *Sedima* decision. *Id.* The Court in *H.J. Inc.* went on to say that "the statement that a pattern 'requires at least' two predicates implies 'that while two acts are necessary, they may not be sufficient.'" *Id.* at 237, 109 S.Ct. 2893 (citing *Sedima,* 473 U.S. at 496, n. 14, 105 S.Ct. 3275). "Thus, when § 1961(5) says that a pattern 'requires at least two acts of racketeering activity' it is describing what is needful but not sufficient. (If that were not the case, the concept of 'pattern' would have been unnecessary, and the statute could simply have attached liability to 'multiple acts of racketeering activity).'" *H.J. Inc.,* 492 U.S. at 255, 109 S.Ct. 2893 (Scalia, J., concurring). In *H.J. Inc.,* the Court found support for this proposition in

the legislative history of RICO. Senator McClellan, a principal sponsor of the Senate bill had stated that "proof of two acts of racketeering activity, without more, does not establish a pattern." *Id.* at 238, 109 S.Ct. 2893 (citing 116 Cong.Rec. 18940 (1970)).

The Supreme Court in *H.J. Inc.* also looked at the usage of the word "pattern" and concluded that it is not the number of acts that is the key, but rather "the relationship that they bear to each other or some external organizing principle that renders them 'ordered' or 'arranged.' " *Id.* The Court inferred that "Congress intended to take a flexible approach, and envisaged that a pattern might be demonstrated by reference to a range of different ordering principles or relationships between predicates, within the expansive bounds set." *Id.* "A pattern is not formed by 'sporadic activity,' S.Rep. No. 91–617, p. 158 (1969), and a person cannot 'be subjected to the sanctions of title IX simply for committing two widely separated and isolated criminal offenses,' 116 Cong. Rec. 18940 (1970) (Sen.McClellan)." *Id.* at 239. "RICO's legislative history tells us, however, that the relatedness of racketeering activities is not alone enough to satisfy § 1962's pattern element. To establish a RICO pattern it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *Id.* at 240, 109 S.Ct. 2893. (Emphasis in original).

"A 'pattern of racketeering activity' requires 'at least two acts of racketeering activity' occurring within a ten year period, 18 U.S.C. § 1961(5), that are related and amount to or pose a threat of continued criminal activity." *United States of America v. Abed,* 2000 WL 14190, at *8, 2000 U.S.App. LEXIS 261, at *27 (4th Cir. 2000). There are accordingly two areas

that are examined to determine if a scheme meets the "pattern" requirement, namely, relatedness and continuity. "Predicate racketeering acts are related if they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' " *Id.* (citing *H.J. Inc.,* 492 U.S. at 240, 109 S.Ct. 2893).

" 'Continuity' is both a closed and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.,* 492 U.S. at 241, 109 S.Ct. 2893 (citation omitted). "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the *threat* of continuity is demonstrated." *Id.* at 242, 109 S.Ct. 2893 (citing S.Rep. No. 91–617, at 158). (Emphasis in original).

## IV

### *Plaintiffs' RICO Claims*

In support of their pending motions to dismiss, defendants argue that plaintiffs have failed to state a RICO claim upon which relief can be granted and that the two RICO counts of the complaint must be dismissed pursuant to Rule 12(b)(6). Defendants rely on opinions of the Fourth Circuit and of this Court holding that RICO claims should be dismissed on a Rule 12(b)(6) motion where the complaint

fails to allege the requisites of RICO-actionable racketeering activity.

For many years, the Fourth Circuit has taken a somewhat restrictive view of RICO actions based on ordinary claims of fraud. What constitutes a RICO pattern of racketeering has been held by the Fourth Circuit to be a matter of criminal dimension and degree. *International Data Bank Ltd. v. Zepkin,* 812 F.2d 149, 155 (4th Cir.1987). The Fourth Circuit has pointed out that it was Congress' intent that RICO "serve as a weapon against ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." *Id.* In *HMK Corp. v. Walsey,* 828 F.2d 1071, 1074 (4th Cir.1987), the Fourth Circuit emphasized that the heightened civil penalties of RICO "are reserved for schemes whose scope and persistence set them above the routine."

In providing a remedy of treble damages for injury caused by a violation of RICO's substantive provisions, Congress contemplated that "only a party engaging in widespread fraud would be subject to such serious consequences." *Menasco, Inc. v. Wasserman,* 886 F.2d 681, 683 (4th Cir.1989). The pattern requirement in § 1961(5) acts to insure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions. *Id.* Treble damage suits therefore may not be brought against isolated offenders for their harassment and settlement value. *Id.* Multiple state laws bearing on commercial transactions are not to be eclipsed or preempted by RICO. *Id.*

The Fourth Circuit has been particularly cautious "about basing a RICO claim on predicate acts of mail and wire fraud..." *Al–Abood v. El–Shamari,* 217 F.3d 225, 238 (4th Cir.2000). Quoting *Anderson v. Foundation for Advancement, Educ. and Employment of Am. Indians,* 155 F.3d 500, 506 (4th Cir.1998), the Fourth Circuit

in *Al–Abood* stated that "it will be the unusual fraud that does not enlist the mails and wires in its service at least twice." *Id.* at 238. The Court emphasized that its caution in such cases "is designed to preserve a distinction between ordinary or garden variety fraud claims better prosecuted under state law and cases involving a more serious scope of activity." *Id.* Citing *Menasco,* the Court in *Al–Abood* reiterated that it had reserved RICO liability for ongoing, unlawful activities whose scope and persistence pose a special threat to social well-being. *Id.*

Very recently, Chief Judge Smalkin of this Court relied on *Menasco* and *Al–Abood* in dismissing a RICO claim. *Lowry's Reports, Inc. v. Legg Mason, Inc.,* 186 F.Supp.2d 592, 593 (D.Md.2002). Citing *GE Inv. Private Placement Partners v. Parker,* 247 F.3d 543, 549 (4th Cir.2001), Chief Judge Smalkin held that the fact that an alleged RICO scheme based on mail or wire fraud will usually involve a number of separate uses of means of interstate commerce does not alone establish the requisite pattern of racketeering activity. *Id.* at 593. Relying on Fourth Circuit pronouncements which require district courts to take "a common sense approach to the scope of RICO," the RICO claim asserted by plaintiff in *Lowry's Reports* was dismissed. *Id.* at 594. *See also Howard Oaks, Inc. v. Md. Nat'l Bank,* 810 F.Supp. 674, 678 (D.Md.1993).

When the principles of the cases cited hereinabove are applied to the RICO claims alleged in the complaint in this case, this Court concludes that both Count I and Count II must be dismissed pursuant to Rule 12(b)(6). In neither one of these Counts have plaintiffs alleged a viable RICO claim.

■ The Commission's essential complaint concerning the activities of Boyle

and Pauley is that these two individuals violated their fiduciary responsibilities as employees by acting contrary to the best interests of the Commission, their employer. The Commission is here complaining of activities of Boyle and Pauley which were undertaken on Commission time and which used Commission resources to promote their own private business interests. Boyle and Pauley, who were assigned the responsibility of overseeing the development of the new Project and the procurement of computer products and services for the Commission, are charged with improprieties in connection with contractual arrangements between the Commission and two different manufacturers of computer equipment, namely IMCI and Datalux. Defendants Boyle and Pauley rendered advice and made recommendations to plaintiffs and to other government agencies with regard to purchases of technology systems without disclosing that they had a personal pecuniary interest. A conflict of interest arising in an employment context is thus the essential basis for the RICO claims asserted in the complaint.

Missing from the complaint and necessary for pleading a viable RICO claim are allegations of widespread fraud and continuing racketeering activity. *Menasco,* 886 F.2d at 683. Only contractual arrangements relating to this one new project are at issue here. The complaint does not show that these are matters "of criminal dimension and degree." *Zepkin,* 812 F.2d at 155. Defendants' alleged illegal scheme does not implicate "any threat of organized criminal activity" outside the heartland of fraud cases sufficient to justify handling under RICO. *Lowry's Reports,* 186 F.Supp.2d at 593.

This Court accordingly concludes that plaintiffs have failed here to allege the existence of a pattern of racketeering which would permit their RICO claims to go forward. No more than ordinary or garden variety fraud claims are involved in this case, and these and the breach of contract and other claims alleged in nine of the eleven counts of the complaint are "better prosecuted under state law..." *Al-Abood,* 217 F.3d at 238. The wrongs alleged in this case are not of a "scope and persistence" which would "pose a special threat to social well-being." *Zepkin,* 812 F.2d at 155. What occurred here is no more than a dispute which arose in the "ordinary run" of an employment context, and which did not involve acts permitting resort to "RICO's extraordinary remedy." *Menasco,* 886 F.2d at 683. The "scope and persistence" of the alleged wrongful scheme in this case was not one which was "above the routine" and which would therefore permit plaintiffs to seek the heightened penalties of RICO. *Walsey,* 828 F.2d at 1074.

The RICO claims of plaintiff Takoma Park are based on the assertion that defendants Boyle and Pauley recommended, and received a commission on, the sale to it of inferior computers. A commercial dispute of this sort is hardly a matter of criminal dimension and degree.

In their opposition to defendants' motions to dismiss, plaintiffs argue that defendants participated in multiple fraudulent schemes. The Court must disagree. The complaint alleges the existence of only a single scheme whereby defendants Boyle and Pauley sought to personally benefit from sales of computer products and services to the Commission and other law enforcement agencies. These sales were all made in furtherance of the new turnkey project. Defendants IMCI and Datalux are alleged to have participated in this one fraudulent scheme.

■ Moreover, plaintiffs have not in their complaint satisfied the continuity requirement which must be met before a

RICO claim may proceed to trial. Neither the "closed period" nor the "continuing activity" approach has been satisfied. Insofar as IMCI is concerned, the wrong alleged is that Boyle and Pauley improperly supervised performance of its contract with the Commission and improperly authorized the final payment of the amount due under the contract. The predicate acts alleged here were not part "of a prolonged criminal endeavor." *Menasco*, 886 F.2d at 683. The alleged fraud continued at most for some eighteen months, an insufficient period of racketeering activity to support a viable RICO claim. *Parker*, 247 F.3d at 550; *Menasco*, 886 F.2d at 683–84. Defendants' actions were "narrowly directed towards a single fraudulent goal," namely financial gain for themselves. *See Menasco*, 886 F.2d at 684. The allegedly improper payment to IMCI was made in December of 1998,[9] and there are no allegations of a future contractual relationship between the Commission and IMCI which was fraudulently supervised by Boyle and Pauley and which thus led to harm to the Commission. Indeed, Boyle and Pauley are no longer employed by the Commission, having resigned on May 19, 2000.

Similarly, the complaint does not show that defendants can be charged in this case with open-ended racketeering activity. There are no allegations that defendants' conduct posed a threat of long term racketeering activities amounting to "continued criminal activity." *See H.J Inc.*, 492 U.S. at 239, 109 S.Ct. 2893. It has not been alleged that the Commission, Takoma Park and other law enforcement entities have continued after 1999 to purchase inferior products from Datalux at the instance of Boyle, Pauley and MDT. The past conduct challenged here has not by its nature been projected "into the future with a threat of repetition." *Id.* at 241, 109 S.Ct. 2893. Rather, the complaint contains allegations of fraud occurring merely over a finite period of time with no showing of a threat of future criminal activity causing harm to the plaintiffs.

For all these reasons, this Court is satisfied beyond a doubt that plaintiffs can prove no set of facts consistent with the allegations of the complaint supporting their RICO claims which would entitle them to relief.[10] Accordingly, defendants' motions to dismiss plaintiffs' RICO claims will be granted.[11]

## V

### Plaintiffs' State Law Claims

■ There remain plaintiffs' pendent state law claims asserted in Counts III–IX of the complaint. Pendent jurisdiction is a doctrine of discretion and not one of a plaintiff's right. *United Mine Workers v.*

---

**9.** It is not alleged that Boyle, Pauley or MDT received a commission or other monetary gain when the final payment on the IMCI contract was made. Rather, plaintiffs assert that Boyle and Pauley later entered into a consulting and business cooperation agreement with IMCI which was contemplated and negotiated at the time of the wrongful final payment. It is not alleged that the Commission was impacted in any way by this agreement or suffered any harm because of its existence.

**10.** Defendants have also argued that plaintiffs' RICO claims must be dismissed pursuant

to Rule 9(b), F.R.Civ.P., because plaintiffs have failed to state with particularity the circumstances of the fraud alleged. Since the Court has concluded that plaintiffs' RICO claims must be dismissed pursuant to Rule 12(b)(6), it is not necessary to consider whether plaintiffs have also not complied with the requirements of Rule 9(b).

**11.** Plaintiffs' request that they be granted leave to amend their complaint will be denied. Under the circumstances here, any such amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

*Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). However, the Supreme Court has expressly cautioned that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal law claims are dismissed before trial ... the state claims should be dismissed as well." *Id.* at 726, 86 S.Ct. 1130. The principles of *Gibbs* have been codified under the name "supplemental jurisdiction." 28 U.S.C. § 1367.

Here, the only federal claims asserted against defendants in plaintiffs' complaint are being dismissed. A court may decline to exercise supplemental jurisdiction if all claims over which it has original jurisdiction have been dismissed. 28 U.S.C. § 1367(c)(3). A majority of the courts which have considered the question have declined to exercise pendent jurisdiction over state claims when the federal claims have been disposed of prior to a full trial on the merits. *See Hector v. Weglein,* 558 F.Supp. 194, 204–205 (D.Md.1982). Outlining the relevant factors to be considered in determining the appropriateness of a court's exercise of its discretion to decide pendent state claims, Judge Friendly in *Kavit v. A.L. Stamm & Co.,* 491 F.2d 1176, 1180 (2d Cir.1974) said the following:

> If it appears that the federal claims ... could be disposed of on a motion..., the court should refrain from exercising pendent jurisdiction absent exceptional circumstances.

*Id.* at 1180.

Since all of plaintiffs' federal claims have been dismissed pursuant to Rule 12(b)(6) and since there are no exceptional circumstances here, this Court will not exercise pendent jurisdiction in this case over Counts III–XI. Accordingly, plaintiffs' state law claims will be dismissed, without prejudice to plaintiffs' right to assert these claims in a state court.

## VI

### *Conclusion*

For all the reasons stated, the motion to dismiss of defendants Boyle, Pauley and MDT will be granted, and the motion to dismiss of defendant IMCI will also be granted. Accordingly, the complaint will be dismissed as to all defendants. An appropriate Order will be entered by the Court.