**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-2356

C. ALLEN FOSTER; SUSAN C. FOSTER; WILLIAM F. JONES,

Plaintiffs - Appellants,

v.

WINTERGREEN REAL ESTATE COMPANY; RICHARD C. CARROLL; PETER
V. FARLEY; TIMOTHY C. HESS; KYLE T. LYNN,

Defendants - Appellees.

Appeal from the United States District Court for the Western
District of Virginia, at Charlottesville. Norman K. Moon,
District Judge. (3:08-cv-00031-nkm-bwc)

Argued: December 4, 2009     Decided: January 29, 2010

Before TRAXLER, Chief Judge, and AGEE and DAVIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Edward B. Lowry, MICHIE, HAMLETT, LOWRY, RASMUSSEN & TWEEL, PC,
Charlottesville, Virginia, for Appellants. Lloyd Lee Byrd,
SANDS, ANDERSON, MARKS & MILLER, Richmond, Virginia, for
Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Allen Foster ("A. Foster"), Susan Foster ("S. Foster"), and William Jones ("Jones") (collectively, "Plaintiffs") appeal the judgment of the United States District Court for the Western District of Virginia, which dismissed their Complaint against Wintergreen Real Estate Company ("WREC"), Richard Carroll ("Carroll"), Peter Farley ("Farley"), Timothy Hess ("Hess"), and Kyle Lynn ("Lynn") (collectively, "Defendants") for failure to state a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., and the Lanham Act, 15 U.S.C.A. § 1125(a).[1] The Plaintiffs also appeal the district court's subsequent denial of a motion to amend the Complaint. For the following reasons, we affirm the judgment of the district court.

I.

A.

During a period of approximately three years, the Plaintiffs, three real estate investors, purchased and sold a

---

[1] The Complaint and Amended Complaint also make various state law claims, including fraud, misrepresentation, breach of fiduciary duty, breach of contract, breach of express warranty, statutory and common law conspiracy, false advertising, and tortious interference. The dismissal of these claims is not challenged on appeal.

number of properties in the Wintergreen Resort ("Resort") using the services of WREC and the individual Defendants.

Plaintiffs allege that, during the course of their business dealings, Defendants made various false statements and/or concealed material facts, which include, generally: that the Defendants are members of the Multiple Listing Service ("MLS") and that all of the properties would be listed on the MLS (hereinafter "MLS scheme");[2] that WREC is the dominant real estate company in the Resort (Complaint & Amended Complaint ¶¶18, 22); that Carroll is the top real estate agent at WREC (Complaint & Amended Complaint ¶¶18, 22); that WREC engages in an "effective marketing program";[3] that Defendants fraudulently

---

[2] Plaintiffs allege that "inclusion in the MLS is a critical factor in the exposure of 'for sale' properties to the marketplace and, thereby, in securing the best price for such properties." (Complaint & Amended Complaint ¶35). Plaintiffs further allege that, "even in the cases in which the Defendants actually did put Plaintiffs' 'for sale' lots in MLS, they did not include a picture of the lot in the listing, thereby making the MLS listing essentially worthless, contrary to the representations the Defendants had made to the Plaintiffs" (so-called "sham" listings). (Complaint ¶66; Amended Complaint ¶75). In the Amended Complaint, Plaintiffs further allege that Defendants "utilized similar 'sham' MLS listings . . . to defraud hundreds of sellers other than the Plaintiffs, beginning no later than January, 2000 . . . ." (Amended Complaint ¶76).

[3] Specifically, "contrary to the representations which the Defendants had made to the Plaintiffs," "Defendants did not prepare [or distribute] color brochures for Plaintiffs' 'for sale' homes" (Complaint ¶¶68-69; Amended Complaint ¶¶80-81); "Defendants did not hold an open house" (Complaint ¶70; Amended Complaint ¶82); "Defendants did not put Plaintiff's 'for sale' (Continued)

assured Plaintiffs that the Summit House property was the "last piece of developable multifamily land left at [the] Resort" (Complaint ¶¶100-09; Amended Complaint ¶¶121-32); that Defendants failed to disclose that there was a noisy stump grinder operating next to property Plaintiffs purchased in the Stoney Creek area of the Resort (Complaint ¶¶110-15; Amended Complaint ¶¶133-38); and that Defendants violated dual representation restrictions (Complaint ¶¶85-96; Amended Complaint ¶¶105-17), and other realtor standards of conduct. (Amended Complaint ¶¶148-51).

Plaintiffs contend that at least some of these alleged fraudulent acts were conducted through interstate communication via the mail and wire, and were perpetrated on "hundreds" of other out-of-state clients. They claim that all of these acts were committed so that Defendants would earn a higher commission, at the expense of potential profit for Plaintiffs. (Complaint ¶¶84, 96, 108, 113, 123; Amended Complaint ¶¶104, 112, 131, 136, 146).

Based on these allegations, Plaintiffs alleged that Defendants violated several statutes: (1) conducting or

---

properties on any exclusive Wintergreen TV channel" (Complaint ¶71; Amended Complaint ¶83); and "Defendants did not advertise Plaintiffs' 'for sale' properties in any commercial print medium." (Complaint ¶72; Amended Complaint ¶84).

participating in a RICO enterprise, in violation of 18 U.S.C. § 1962(c) (Count I); (2) investment of proceeds of racketeering activity, in violation of 18 U.S.C. § 1962(a) (Count II); (3) conspiracy to violate RICO, in violation of 18 U.S.C. § 1962(d) (Count III) (collectively, "RICO claims"); and (4) false advertisement, in violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count XI).

## B.

The district court dismissed the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, holding, in relevant part, that Plaintiffs failed to allege facts supporting the RICO claims and did not have standing to assert the Lanham Act claim. As to the RICO claims, the court held that

> the pattern alleged by the Plaintiffs is based solely on predicate acts of wire and mail fraud. Such cases require closer scrutiny before concluding that Plaintiffs have shown a pattern of racketeering activity. When considering the alleged scheme at issue in this case, it does not appear to be the type of social evil meant to be addressed by RICO. While Plaintiffs allege the scheme was directed at other victims besides themselves, those allegations are too speculative to support a finding of a pattern of racketeering activity.

J.A. 213.

As to the Lanham Act claim, the district court held that Plaintiffs lacked standing because "[t]he Fourth Circuit has

5

squarely held that consumers do not have standing to sue under the Lanham Act," J.A. 216-17, and "in this case . . . it is difficult to imagine how the Plaintiffs might have had any relationship with the Defendants other than as a consumer." J.A. 218.

Plaintiffs moved for reconsideration and for leave to amend the Complaint. In conjunction with these motions, Plaintiffs proffered an Amended Complaint "on the grounds that the additional allegations contained in the proposed Amended Complaint would cure the defects in the original Complaint and state a claim under [RICO]." J.A. 539.

The Amended Complaint contained the same basic allegations made in the Complaint, with greater detail and certain notable additions: it included additional details about the properties allegedly involved in the MLS scheme (Amended Complaint ¶¶43-54); charged that the MLS scheme took place for eight years instead of three years and that Defendants perpetrated the scheme on hundreds of other clients (Amended Complaint ¶¶76-78); included the names and addresses of some of these persons, J.A. 419-512; included allegations of how each individual Defendant was personally involved in the scheme (Amended Complaint ¶86); included an affidavit from Wesley C. Boatwright ("Boatwright"); and included an affidavit from Ivo Romanesko ("Romanesko"), attesting that "the use of marketing tools, such as including

6

properties in MLS . . . are essential" and "the standard in the industry." J.A. 235.

The district court denied both the motion for reconsideration and the motion to amend. The court evaluated the Amended Complaint and held that amendment would be futile as

> the additional allegations are insufficient to show that the alleged scheme extended beyond the Plaintiffs in scope or degree adequate to constitute a pattern of racketeering activity.
>
> . . . None of the additional allegations in the Amended Complaint serve to differentiate this case from a "garden variety fraud" or ordinary business dispute.

J.A. 542-43.

Plaintiffs timely appealed the district court's judgment, and we have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1294.

II.

Plaintiffs contend that the district court erred in holding that Counts I, II, and III failed to adequately allege a pattern of racketeering activity. Plaintiffs also contend that the district court erred in finding that Count XI failed to adequately state a cause of action under the Lanham Act. Finally, Plaintiffs argue that the district court abused its

7

discretion by denying the motion to amend on the grounds of futility.[4]

We review a district court's dismissal pursuant to Rule 12(b)(6) de novo. Robinson v. Am. Honda Motor Co., 551 F.3d 218, 222 (4th Cir. 2009). Courts should "read the facts alleged in the complaint in the light most favorable to petitioners," H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 249-50 (1989), and the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.

The standard of review applicable to the denial of a motion to amend pursuant to Rule 15(a) is an abuse of discretion standard. Laber v. Harvey, 438 F.3d 404, 428 (4th Cir. 2006) (en banc).

---

[4] Plaintiffs do not appeal the district court's denial of the motion for reconsideration.

III.

A. RICO Claims

Count I alleges that Defendants conducted or participated in a RICO enterprise, in violation of 18 U.S.C. § 1962(c). Section 1962(c) provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). "'Racketeering activity' is defined as any of a number of predicate acts, including mail and wire fraud," Al-Abood v. El-Shamari, 217 F.3d 225, 238 (4th Cir. 2000), as alleged in the case at bar. See 18 U.S.C. §1961(1).[5] For a pattern of racketeering activity to exist, "two or more predicate acts of racketeering must have been committed within a ten year period." ePlus Tech., Inc. v. Aboud, 313 F.3d 166, 181 (4th Cir. 2002).

The pattern requirement is important because "[i]n providing a remedy of treble damages . . . Congress contemplated

---

[5] The elements of mail fraud are: "(1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme." Pereira v. United States, 347 U.S. 1, 8 (1954). The elements of wire fraud are similar; applying to the use of electronic or telephonic communication. Plaintiffs have pled multiple instances of mail and wire fraud.

that only a party engaging in widespread fraud would be subject to such serious consequences." Menasco, Inc. v. Wasserman, 886 F.2d 681, 683 (4th Cir. 1989). For this reason, RICO's remedies are not appropriate for "the ordinary run of commercial transactions." Id.; see also ePlus Tech., 313 F.3d at 181 (noting that the pattern requirement is "designed to prevent RICO's harsh sanctions . . . from being applied to garden-variety fraud schemes"). Instead, "[w]e have reserved RICO liability for 'ongoing unlawful activities whose scope and persistence pose a special threat to social well-being.'" Al-Abood, 217 F.3d at 238 (quoting Menasco, 886 F.2d at 684).

Consequently, "simply proving two or more predicate acts is insufficient for a RICO plaintiff to succeed." Id. at 238. Instead, "a plaintiff . . . must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." H.J. Inc., 492 U.S. at 239. Thus, "[i]n essence, the pattern requirement has been reduced to a 'continuity plus relationship' test." ePlus Tech., 313 F.3d at 181.

As to the continuity requirement, "'[c]ontinuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." H.J. Inc., 492 U.S. at 241. Closed-ended continuity is shown by

10

"proving a series of related predicates extending over a substantial period of time." Id. at 242. Open-ended continuity "depends on the specific facts of each case" and may be shown, for example, "if the related predicates themselves involve a distinct threat of long-term racketeering activity," or if "the predicate acts or offenses are part of an ongoing entity's regular way of doing business." Id.

Although Plaintiffs allege multiple instances of mail and wire fraud over the course of an arguably substantial period of time, "we are cautious about basing a RICO claim on predicate acts of mail and wire fraud because it will be the unusual fraud that does not enlist the mails and wires in its service at least twice." Al-Abood, 217 F.3d at 238 (internal quotations omitted). "This caution is designed to preserve a distinction between ordinary or garden-variety fraud claims better prosecuted under state law and cases involving a more serious scope of activity." Id.

The case at bar is such an instance of "garden-variety fraud." Essentially, Plaintiffs allege that Defendants misrepresented their efforts to market for-sale properties, misrepresented or failed to disclose material facts about specific properties, and breached their fiduciary duties. These are quintessential state law claims, not a "scheme[] whose scope

11

and persistence set [it] above the routine." <u>HMK Corp. v. Walsey</u>, 828 F.2d 1071, 1074 (4th Cir. 1987).

This conclusion is bolstered by the fact that Plaintiffs failed to plead with particularity that any other persons were similarly harmed by Defendants' alleged fraud, and thus failed to show "a distinct threat of long-term racketeering activity." <u>H.J. Inc.</u>, 492 U.S. at 242; <u>see also</u> <u>Menasco</u>, 886 F.2d at 684. The Complaint summarily draws the conclusion that other persons were harmed by the MLS scheme because "a comparison of the MLS listings for Nelson County with the Nelson County property transfer records during the relevant period reveals hundreds of properties . . . which were, on information and belief, listed with Defendants but were not included in MLS." J.A. 29. Based on this fact and the vague reference to "interview[s] [with] a number of sellers," Plaintiffs argue that Defendants "did not obtain those sellers' consent to the omission of those properties from MLS." J.A. 29. However, a complaint must plead sufficient facts to allow a court to infer "more than the mere possibility of misconduct." <u>Iqbal</u>, 129 S. Ct. at 1950.

Plaintiffs attempted to rectify this deficiency in the Amended Complaint by including lists of properties handled by Defendants that were not listed on MLS and the names and addresses of the sellers associated with those properties. However, regardless of these lengthy exhibits, Plaintiffs

12

nevertheless fail to plead with particularity that any specific person was defrauded other then themselves, much less give any particulars of the fraud. Therefore, "[t]hese allegations lack the specificity needed to show a 'distinct' threat of continuing racketeering activity." Menasco, 886 F.2d at 684.

Ultimately, "this circuit will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims." Flip Mortg. Corp. v. McElhone, 841 F.2d 531, 538 (4th Cir. 1988). If we were "to adopt such a characterization[, we] would transform every such dispute into a cause of action under RICO." Id. (internal quotation omitted). In light of these considerations, we hold that this case is "not sufficiently outside the heartland of fraud cases to warrant RICO treatment." Al-Abood, 217 F.3d at 238.[6] The district court thus did not err in granting the motion to dismiss.

---

[6] The remaining RICO claims also fail, as they rely on successfully pleading a pattern of racketeering activity. Plaintiffs argue that the district court erred when it concluded that the "allegations are insufficient under Rule 9(b) to state a claim against the individual Defendants other than Mr. Carroll," because Plaintiffs did not "allege with specificity that any . . . communications were with anyone other than Defendant Carroll." J.A. 208-09. However, because no pattern of racketeering existed as to any Defendant, this argument must fail.

Plaintiffs' argument as to Count II must also fail, because § 1962(a) requires as an element of proof that Defendants "derived income from a pattern of racketeering activity." United (Continued)

13

## B. Lanham Act

The district court found that "[t]he Fourth Circuit has squarely held that consumers do not have standing to sue under the Lanham Act." J.A. 216-17. Because "it is difficult to imagine how the Plaintiffs might have had any relationship with the Defendants other than as a consumer," J.A. 218, the district court concluded that "the Plaintiffs do not have standing to sue under the Lanham Act." Id.

It is undisputed that "a consumer does not have standing under the Lanham Act to sue for false advertising." Made in the USA Found. v. Phillips Foods, Inc., 365 F.3d 278, 281 (4th Cir. 2004) (emphasis added). Instead, the "Lanham Act is 'a private remedy [for a] commercial plaintiff who meets the burden of proving that its commercial interests have been harmed by a competitor's false advertising.'" Id. (quoting Mylan Lab., Inc. v. Matkari, 7 F.3d 1130, 1139 (4th Cir. 1993)); see also Barrus v. Sylvania, 55 F.3d 468, 470 (9th Cir. 1995) ("[I]n order to satisfy standing the plaintiff must allege commercial injury

_____

States v. Vogt, 910 F.2d 1184, 1194 (4th Cir. 1990) (emphasis added).

Consequently, because the Plaintiffs failed to state claims as to §§ 1962(a) or (c), Plaintiffs' charge of conspiracy to violate RICO pursuant to § 1962(d) is also without merit. See GE Inv. Private Placement Partners II v. Parker, 247 F.3d 543, 551 n.2 (4th Cir. 2001).

14

based upon a misrepresentation about a product, and also that the injury was 'competitive,' i.e., harmful to the plaintiff's ability to compete with the defendant."). Although some courts have held that a party need not be in direct competition with the defendant to have standing,[7] no court has held that a consumer has standing.

Plaintiffs attempt to avoid classification as "consumers" by arguing that they have a "business relationship" with Defendants. Nevertheless, Plaintiffs squarely fit into the "consumer" category. Plaintiffs were typical consumers of Defendants' services as a real estate company and real estate agents. The "business relationship" to which Plaintiffs refer is simply a different term for the ordinary relationship between a seller of real estate services and the consumer of those services. Thus, as consumers, Plaintiffs lack standing to sue under the Lanham Act and the district court did not err in granting the motion to dismiss.

---

[7] See Berni v. Int'l Gourmet Rests. of Am., Inc., 838 F.2d 642, 648 (2d Cir. 1988); Camel Hair and Cashmere Inst. of Am., Inc. v. Associated Dry Goods Corp., 799 F.2d 6, 12 (1st Cir. 1986) (holding that a trade group had standing, because its commercial interest had been harmed even though not a competitor).

15

## C. Motion to Amend

> "[A] post-judgment motion to amend is evaluated under the same legal standard"—grounded on Rule 15(a)—"as a similar motion filed before judgment was entered." Rule 15(a) directs that leave to amend shall be freely given when justice so requires. . . . Our court therefore reads Rule 15(a) to mean that leave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile.

Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc., 576 F.3d 172, 193 (4th Cir. 2009) (quoting Laber, 438 F.3d at 426-27) (internal citations omitted). "Leave to amend . . . should only be denied on the ground of futility when the proposed amendment is clearly insufficient . . . on its face." Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986).

The district court considered the Amended Complaint and held that it would be futile to grant the motion to amend because "the additional allegations are insufficient to show that the alleged scheme extended beyond the Plaintiffs in scope or degree adequate to constitute a pattern of racketeering activity." J.A. 542.

As discussed above, neither the Complaint nor the Amended Complaint allege a pattern of racketeering activity sufficient to support a RICO claim, nor did the Amended Complaint cure Plaintiffs' lack of standing under the Lanham Act. Thus, "[t]he proposed amendment would not have corrected the fundamental

16

defect in the complaint." New Beckley Min. Corp. v. Int'l Union, United Mine Workers, 18 F.3d 1161, 1164 (4th Cir. 1994). Therefore, the district court did not abuse its discretion in holding that amendment would be futile and denying the motion to amend.

IV.

For the foregoing reasons, we conclude that the district court did not err in dismissing Plaintiffs' Complaint for failure to state a claim. Nor did the district court abuse its discretion in denying Plaintiffs' motion to amend due to futility. Accordingly, the judgment of the district court is

AFFIRMED.

17